**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**NORTH AMERICAN FINANCE COMPANY, a corporation, Eugene M. Rosenson, and Marcus T. Baumann, individually, and Eugene M. Rosenson and Marcus T. Baumann, a co-partnership, Defendants.**

**Civ. A. No. 2925 PHX.**

United States District Court
D. Arizona.

April 17, 1959.

198

Arthur E. Pennekamp, Regional Administrator, F. E. Kennamer, Jr., Chief Enforcement Atty., San Francisco, Cal., John W. Vogel, Milford A. Maron, Los Angeles, Cal., for Securities and Exchange Commission.

Sidney B. Wolfe, Van Haren, Forquer & Wolfe, Phoenix, Ariz., for defendant North American Finance Co.

Mario L. Clinco, Los Angeles, Cal., Richard F. Harless, Phoenix, Ariz., for defendants Eugene M. Rosenson and Marcus T. Baumann, individually, and Eugene M. Rosenson and Marcus T. Baumann, a co-partnership.

JAMES A. WALSH, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This action having been heard on August 20, 1958, on motion of the Securities and Exchange Commission, plaintiff herein, for a preliminary injunction, the Commission and the defendants North American Finance Company, a corporation, Eugene M. Rosenson and Marcus T. Baumann, individually, and Eugene M. Rosenson and Marcus T. Baumann, a co-partnership, appearing by their respective counsel, and the Court having considered the motion and defendants' response thereto, the affidavit filed in support of and in opposition to the motion, the testimony and documentary evidence received in the course of the hearing, and the arguments of counsel, now enters the following findings of fact and conclusions of law.

# I

## INTRODUCTION

1. This is an action by the Securities and Exchange Commission ("Commission") to enjoin the defendants North American Finance Company ("North American"), Eugene M. Rosenson ("Rosenson") and Marcus T. Baumann ("Baumann"), individually, and Rosenson and Baumann, a co-partnership, from engaging in acts and practices constituting violations of Section 5(b) and Section 17(a) of the Securities Act of 1933, as amended, ("Securities Act"), 15 U.S.C. § 77e(b) and § 77q(a), and Section 15(c) (1) of the Securities Exchange Act of 1934, as amended, ("Exchange Act"), 15 U.S.C. § 78o(c) (1), in the sale of the Class B Common Non-Voting Stock, (Par Value $1), issued by the defendant North American Finance Company.

2. On August 4, 1958, the Commission, pursuant to Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b), and Section 21(e) of the Exchange Act, 15 U.S.C. § 78u(e), brought this action to enjoin such acts and practices.

3. This Court has jurisdiction of this action and the parties hereto, pursuant to Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

# II

## SUMMARY OF COMPLAINT

1. The first count of the complaint for injunction alleges that the defendants North American, Rosenson and Baumann, individually, and Rosenson and Baumann, a co-partnership, have been offering to sell and selling the Class B Common Non-Voting Stock, (Par Value $1), ("stock"), issued by North American, a security as to which a registration statement has been filed with the Commission under the Securities Act, and that in offering and selling the stock the defendants have been making use of the mails and means and instruments of interstate commerce to transmit and carry a prospectus relating to the stock of North American which does not con-form to the requirements of Section 10 of the Securities Act, 15 U.S.C. § 77j. In addition, the first count charges that, by the same means, the defendants have been causing such securities to be carried for sale and delivery after sale without being accompanied or preceded by a prospectus meeting the requirements of Section 10(b) of the Securities Act, 15 U.S.C. § 77j(b).

2. The second count alleges that in offering and selling the stock of North American, by use of the mails and means and instruments of interstate commerce, the defendants have been engaged in transactions, practices and a course of business operating as a fraud and deceit upon purchasers of the stock, in that the defendants have been making untrue, deceptive and misleading statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in violation of Section 17(a) (3) of the Securities Act, 15 U.S.C. § 77q(a) (3). The second count specifies the numerous untrue statements of material facts which the defendants are alleged to have made in offering and selling the stock of North American, as well as the material facts which the defendants are alleged to have omitted in offering and selling the stock.

3. The third count alleges that in offering and selling the stock of North American, by use of the means and instruments of interstate commerce and of the mails, the defendants have been obtaining money and property by means of the untrue statements and omissions of material facts specified in the second count, in violation of Section 17(a) (2) of the Securities Act, 15 U.S.C. § 77q(a) (2).

4. The fourth count is confined to the defendant Rosenson and Baumann, a co-partnership, and alleges that the defendant, as a broker and dealer in securities, has been using the mails and means and instrumentalities of interstate commerce to effect transactions in, and to induce the purchase and sale of, the stock of

North American, by means of manipulative, deceptive and other fraudulent devices and contrivances, as defined by the Commission in Rule 17 CFR 240.15c1–2, in violation of Section 15(c) (1) of the Exchange Act, 15 U.S.C. § 78o (c) (1), by engaging in the acts and practices specified in the second count.

## III

### SUMMARY STATEMENT

1. North American is a corporation organized December 23, 1955, under the laws of the State of Arizona. Through its offices in Phoenix, Tucson and Yuma, Arizona, and Las Vegas, Nevada, it is engaged in the small loan and consumer finance business. The defendant Rosenson is president and a director of North American, and the defendant Baumann is vice president, treasurer and a director of North American.[1] The co-partnership of Rosenson and Baumann is engaged in business as a broker and dealer in securities.

2. The co-partnership of Rosenson and Baumann entered into an agreement with North American, pursuant to which the co-partnership agreed to undertake the sale of 500,000 shares of North American's Class B Common Non-Voting Stock, (Par Value $1), on a "best-efforts" basis at a public offering price of $3 per share. The agreement provided that the co-partnership is to receive a selling commission of 90¢ per share for each share sold, and additional compensation by way of certain stock options and an 11% bonus payable in shares of the stock.

3. A registration statement covering the issue of 500,000 shares of the stock was filed with the Commission by North American, pursuant to Section 6 of the Securities Act, 15 U.S.C. § 77f, and, as amended, became effective on September 14, 1956. The defendants then commenced the sale of the stock to members of the public on both a cash and one-year installment subscription basis.

4. The fact that the mails and means and instruments of interstate commerce have been used in offering, selling and delivering the stock of North American is clearly established by the evidence. In addition to maintaining offices for the sale of the stock in Phoenix, Tucson and Yuma, Arizona, North American also maintains a sales office in Las Vegas, Nevada.

■ 5. The financial statements filed with the registration statement of North American and the several amendments thereto were certified by Jarvis Weiss ("Weiss") as an "independent public accountant," as required by Schedule A (paragraphs 25 and 26) to Section 7 of the Securities Act, 15 U.S.C. § 77aa and § 77g. Weiss certified the financial statements as an "independent" accountant although in fact he was in no sense independent of the management of the issuer. On the contrary, Weiss has been North American's principal bookkeeper. Weiss posts the Company's monthly journals showing distributions of receipts and disbursements from the subsidiary records and posts the journal records to appropriate ledger accounts. Accordingly, Weiss cannot be regarded as an "independent" accountant by any standard, and certainly not from the standpoint of an accountant certifying the financial statement of an issuer seeking registration of securities to be distributed to the public under the Securities Act. Weiss' certification of the financial statements of North American amounted to nothing more than the authentication and verification of his own accounting procedures. See S.E.C. Accounting Series Release No. 47 (1944); Cornucopia Gold Mines, 2 S.E.C. 364, 367 (1936); Interstate Hosiery Mills, Inc., 4 S.E.C. 706 (1939); Cristina Copper Mines, Inc., 33 S.E.C. 397 (1952); Rappaport, S.E.C. Accounting Practice and Procedure, pp. 455, 457.

6. As stated by the Commission in Cornucopia Gold Mines, Inc., supra, p.

---

[1]. These findings are entered as of August 22, 1958. Since that time the Court is advised that North American has a new management.

367, such "certification is a material fact," the independence of the certifying accountant is of the utmost significance to investors, the "history of finance well illustrates the importance and need for submission [to independent accountants] of the accounting practices and policies of the management \* \* \*," and such a certification "cannot be dismissed under the Act as a mere 'tag' attached to financial statements."

7. The misrepresentation of Weiss as an "independent" accountant is not the only significant misrepresentation in North American's registration statement and prospectus. The use of the prospectus, including the financial statements certified by Weiss, in the sale of the stock of North American has been in violation of Section 5(b) of the Securities Act, 15 U.S.C. § 77e(b),[2] and may have given rise to liabilities to purchasers under Section 12(1) of the Act, 15 U.S.C. § 77l (1), as well as to liabilities under Sections 11 and 12(2) of the Act, 15 U.S.C. § 77k and § 77l(2), by reason of the misstatement of the status of the certifying accountant.

8. Moreover, from the beginning, the sale of the stock of North American has been accomplished by means of other misrepresentations for which the issuer may have incurred liability to purchasers under Section 12(2) of the Act, 15 U.S.C. § 77l(2). The existence of these significant and material contingent liabilities is not disclosed in the registration statement or in any amendment thereto, although, as of October 31, 1957, some 308,995 of the registered shares of North American had been sold for cash or on a subscription basis at $3 per share. The omission to disclose the contingent liabilities arising from the sale of these shares, and the misrepresentation of Weiss' status as an independent accountant, obviously so affected the registration statement and the amended prospectus dated December 13, 1957, that the prospectus could not, under any circumstances, be regarded as meeting the requirements of Section 10 of the Securities Act, 15 U.S.C. § 77j.

9. The stock of North American has been sold through a sales organization recruited, employed and instructed by Rosenson and Baumann. Investors have been induced to purchase the stock by misrepresentations and misstatements which have included, in addition to the misrepresentations contained in the registration statement, statements that investments in the stock will be "refunded" by North American on demand, and that the stock is "insured," or at least "safe." The Court makes no findings at this time as to other areas of misrepresentation alleged in the complaint, concerning, among other things, the anticipated higher offering price of the "next issue" of the stock, the dividends to be received by investors, the amount of stock available for sale to investors, and the growth potential of North American as compared with the growth experienced by one of the principal consumer finance companies in the United States, although the affidavits submitted by the Commission tend to sustain such allegations.

10. As of June 12, 1958, the stock of North American had been distributed to some 1,914 shareholders. As of August 5, 1958, there were unpaid subscriptions by some 532 subscribers for a total of 143,694 shares aggregating $431,082. These unpaid subscriptions, as stated in the prospectus, are in effect subscription

2. The effect of Section 5(b) of the Securities Act is to prohibit the use of the mails or means of interstate commerce to transmit any prospectus relating to securities registered with the Commission unless the prospectus meets the statutory requirements set forth in Section 10, or to carry such registered securities for delivery after sale unless they are accompanied or preceded by the statutory prospectus. The registration process and the requirement for delivery of a prospectus meeting the statutory standards are intended to require full and fair disclosure of the character of the securities being sold, thereby making available to investors the information necessary in exercising an informed opinion as to the nature and quality of the investment.

/

options. It is the policy of North American to issue shares to subscribers immediately for the number of shares paid for, but whether the subscriber utilizes the subscription is optional, and if he "does not wish to exercise the subscription option or any balance thereon, it is cancelled at no further obligation to the subscriber." As periodic payments are made pursuant to subscription, shares are immediately issued for the amount of the payment in multiples of $3 per share.

11. The sale of the stock of North American on the subscription option basis constitutes a continuing offer to sell the securities as the term "offer to sell" is defined in Section 2(3) of the Securities Act, 15 U.S.C. § 77b(3), and that the sale is not consummated until the full subscription price has been received by the issuer and all shares subject to the subscription have been issued and delivered to the subscriber. Accordingly, as one of the subscribers has received a statutory prospectus meeting the standards of Section 10 of the Securities Act, 15 U.S.C. § 77j, the use of the mails or means of interstate commerce in the collection of installment payments, or otherwise in connection with the sale of the stock, or in delivering the stock certificates after payment has been accomplished, will constitute further violations of Section 5(b) of the Act, 15 U.S.C. § 77e(b), and, in the circumstances, will constitute continued violations of Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section 15(c)(1) of the Exchange Act, 15 U.S.C. § 78o(c)(1), and Rule 17 CFR 240.15cl-2 thereunder, defining and prohibiting fraud in the sale of securities.

## IV

### CONCLUSION

The evidence before the Court establishes that the defendants have engaged in acts and practices in violation of. Sections 5(b) and 17(a)(2) and (3) of the Securities Act, 15 U.S.C. § 77e(b), § 77q(a)(2) and (3), and Section 15(c)(1) of the Exchange Act, 15 U.S.C. § 78o(c)(1), and Rule 17 CFR 240.15c1-2, and entitles the Commission to a preliminary injunction.