**Ben DISKIN, Plaintiff,**

v.

**LOMASNEY & CO., a partnership and Myron A. Lomasney, Defendants.**

**No. 70 Civ. 22.**

United States District Court,
S. D. New York.

May 27, 1971.

Ruben Schwartz, New York City, for plaintiff; by Martin W. Fogel, New York City, of counsel.

Demov, Morris, Levin & Shein, New York City, for defendants; by Irving Bizar, New York City, of counsel.

### FINDINGS AND OPINION

POLLACK, District Judge.

Plaintiff sues to rescind a purchase of securities from a broker-dealer claiming that the stock was unregistered and that in violation of the Securities Act of 1933, Section 5, the defendant sent him a written communication through the mails which was an offer to sell the stock or a prospectus within the meaning of the Act that did not satisfy the statutory requirements for a prospectus.

The defendant contends that the written communication relied on by the plaintiff was not an offer to sell an unregistered security nor a prospectus which was required to conform to Section 10 of the Act. According to the defendant, the stock sold to the plaintiff was duly registered and the delivery thereof was accompanied or preceded by a prospectus that meets the requirements of Subsection (a) of Section 10; and consequently, the defendant contends that there was no violation of Section 5 of the Act which would allow the plaintiff to rescind the sale.

The underlying facts herein have been agreed upon by the parties.

A preliminary registration statement for the securities of Continental Travel, Ltd. was filed with the Securities Exchange Commission on August 28, 1968. Some time during the Summer of 1968, the plaintiff and the defendant discussed the shares of stock of Continental Trav-

el, Ltd. and of Ski Park City West, S.I. The defendant had agreed to sell on a "best efforts" basis up to 60,000 shares of the common stock of Ski Park City West, S.I. On September 17, 1968, the defendant sent to the plaintiff a final prospectus for Ski Park City West, S.I. stock which was being offered by the defendant for sale to the public, accompanied by a letter of transmittal dated the same date. The body of the letter from the defendant to the plaintiff stated:

I am enclosing herewith, a copy of the Prospectus on SKI PARK CITY WEST. This letter will also assure you that if you take 1,000 shares of SKI PARK CITY WEST, at the issue price, we will commit to you the sale at the public offering price when, as and if issued, 5,000 shares of CONTINENTAL TRAVEL, LTD.

On September 17, 1968, plaintiff placed an order over the telephone with the defendant for 1,000 shares of Ski Park City West, S.I. stock and received written confirmation thereof dated the same day from the defendant. Thereafter, on September 26, 1968, plaintiff paid to the defendant the sum of $10,000 for the 1,000 shares of Ski Park City West, S.I. stock.

A registration statement for the sale to the public of 350,000 shares of the capital stock of Continental Travel, Ltd. at $12 per share became effective on February 11, 1969. The defendant was a principal underwriter of the shares for their sale to the public. On the next day, February 12, 1969, the defendant delivered a confirmation to the plaintiff of the sale to him of 5,000 shares of Continental Travel, Ltd. at $12 per share and billed the plaintiff therefor in the amount of $60,000. The plaintiff received from the defendants, prior to February 28, 1969, a prospectus and registration statement for Continental Travel, Ltd. shares conforming to the requirements of Section 10 of the Act. On February 28, 1969 plaintiff paid the defendant $60,000 for the 5,000 shares of Continental Travel, Ltd. stock.

Thereafter, on or about March 3, 1969, the defendant delivered to the plaintiff certificates for 5,000 shares of Continental Travel, Ltd. stock.

On November 19, 1969, plaintiff wrote a letter to the defendant which states in part:

I submit herein a demand that you rescind the entire and total transaction and refund all monies expenses on CONTINENTAL TRAVEL, LTD. plus interest.

The defendant did not respond to the plaintiff's demand letter. This suit followed.

The dispute between the parties turns on the question whether the letter of September 17, 1968 was an offer to sell Continental shares. The defendant contends that a mere expression of intention or general willingness to do something on the happening of a particular event in the future does not amount to an offer. However, this case need not be considered on abstract notions. An "offer" and "offer to sell" are expressly defined in Section 2(3) of the Act. The definition specifically excludes from the scope thereof for purposes of the Act a right to subscribe to a security, "when originally issued or transferred with a security", which cannot be exercised until some future date. After defining an offer in terms inclusive of every attempt to dispose of a security or interest in a security or to solicit an offer to buy the same, the statute provides the following exceptions:

The issue or transfer of a right or privilege, when originally issued or transferred with a security, giving the holder of such security the right to convert such security into another security of the same issuer or of another person, or giving a right to subscribe to another security of the same issuer or of another person, which right cannot be exercised until some future date, shall not be deemed to be an offer or sale of such other security;

This definition is dispositive of the instant case. Ski Park was the security

with which subscription rights to Continental stock, not exercisable until some future date, was transferred. Consequently, the September 17, 1968 letter which granted such a subscription right was not an offer for Continental under Section 2(3) of the Act.

Cases in which "offers" have been made that were not connected with the sale of another security are to be distinguished from those covered by the foregoing definition. Thus, Lawrence v. S. E. C., 398 F.2d 276 (1st Cir. 1968) held that a written commitment by a broker to deliver shares of stock "when issued" was a "sale" under Section 2(3). Similarly, in S. E. C. v. North American Finance Co., 214 F.Supp. 197 (D.Ariz. 1959) it was held that a sale of stock of a corporation on a "subscription" option basis was an "offer to sell" under Section 2(3). However, in those cases the granting of the when issued or subscription right was not connected "originally" with the sale of another security.

A leading securities expert has noted:

> Moreover, for some reason which is not apparent, this concept of delayed "offer" in § 2(3) applies only when the right is "originally issued or transferred with a security." Thus, when warrants are issued independently of any other security, there is again by negative implication an immediate "offer" of the security which they call for although they may not be immediately exercisable even as a legal matter. 1 Loss, Securities Regulation 299 (2d ed. 1961).

The determination herein that the September 17th letter did not constitute an offer under Section 2(3) of the Act is dispositive of the issue of whether it constituted a prospectus under Section 2(10) since "prospectus" is defined in Section 2(10) in terms of "offer" as follows:

> The term "prospectus" means any prospectus, notice, circular, advertisement, letter, or communication, written or by radio or television, which offers any security for sale or confirms the sale of any security; * * *

Accordingly, the plaintiff has failed to establish that the defendant violated Section 5 of the Securities Act of 1933 and he is not entitled to the rescission sought herein.

The complaint herein also contains allegations of claims under the provisions of Sections 10, 15, 20 and 27 of the Securities and Exchange Act of 1934 and possibly claims under the '33 Act beyond the alleged violation of section 5. The parties have stipulated in writing, with the approval of the Court, that the pleadings are amended to eliminate all claims from the case, other than the one based on section 5 of the '33 Act and specifically withdrawing any and all claims as to any section 10(b) violation of the '34 Act. Thus, the plaintiff's only claim is the one based upon section 5 of the '33 Act. That claim is insufficient.

The complaint is dismissed, with costs.

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a) of the Federal Rules of Civil Procedure.

So ordered.