Nora STEWART, Plaintiff,

v.

Norman GERMANY, N. Forrest Germany, J. Louis Alford and Prescott Shermann, the Natchez Hotel Company, Defendants.

No. Civ. A. J84–0903(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

March 20, 1986.

Luke Dove, Jackson, Miss., for plaintiff.

Thomas W. Crockett, Jackson, Miss., Fred D. Wilshusen, Dallas, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

BARBOUR, District Judge.

The Court has before it the Motion of Defendants, Norman Germany, N. Forrest Germany, J. Louis Alford, Prescott Sherman (hereinafter sometimes referred to as "Managing General Partners") and the Natchez Hotel Company[1], to Dismiss or for Judgment on the Pleadings. The issues raised by Defendants' Motion are whether Plaintiff's general partnership interest is a security, and, if so, whether the various statutes of limitation bar Plaintiff's federal and state securities claims against Defendants.

## FACTS

This action arises out of the purchase by Plaintiff of a general partnership interest in the Natchez Hotel Company, a Mississippi general partnership ("the Partnership"), formed in September 1980 for the purpose of restoring, owning, developing and operating the Eola Hotel in Natchez, Mississippi. Defendants are, or have been, general partners of the partnership and the general partnership itself.

Plaintiff's First Amended Complaint, consisting of five counts, alleges violations of the Securities Act of 1933, 15 U.S.C. § 77a, et seq., the Securities Exchange Act

---

**1.** On October 22, 1985, Plaintiff filed its First Amended Complaint, joining the Natchez Hotel Company and requesting its dissolution, in addition to other allegations. On November 22, 1985, Defendants, including the Natchez Hotel Company, filed an Amended Motion to Dismiss the First Amended Complaint. Pursuant to Rule 15(c) of the Federal Rules of Civil Procedure, Plaintiff's claims against the Natchez Hotel Company relate back to the date of filing of the original Complaint. Unquestionably, the claims against the Natchez Hotel Company arise out of the same transaction alleged in the original Complaint. Moreover, the Natchez Hotel Company received notice of suit upon the filing of suit against its general, managing partners. *See Miss.Code Ann.* § 79–12–23 (partnership charged with knowledge of or notice to partners). As such, the Natchez Hotel Company knew or should have known that suit would or could be brought against it.

of 1934, 15 U.S.C. § 78a, *et seq.*, and Mississippi state securities laws. In essence, Plaintiff claims that her general partnership interest in the Natchez Hotel Company is a security and that Defendants, as managing general partners and controlling persons of the Natchez Hotel Company, violated federal and state securities laws by failing to register the offering of the alleged security; by failing to state material facts relating to the offering of the alleged security; by fraudulently misrepresenting or omitting material facts relating to the alleged security; and by breaching fiduciary duties owed by Defendants as managing general partners to Plaintiff. Specifically, Plaintiff claims that Defendants made the following misrepresentations or omissions with regard to the sale to her of her general partnership interest: (1) the partnership had not retained qualified, competent management to operate the Eola Hotel; (2) the managing partners paid less for the purchase of their partnership interest than those subsequently admitted to the partnership; (3) the Plaintiff would be required to pay "cash calls" substantially in excess of her original investment; (4) the failure to pay any single "cash call" would result in the forfeiture of Plaintiff's entire investment and partnership interest although she would remain liable on the guaranty agreement held by Deposit Guaranty National Bank and would have to pay tax "recapture" in the event of forfeiture; (5) the actual cost of renovation substantially exceeded the estimated cost of renovation; (6) the partnership was substantially over budget at the time Plaintiff purchased her partnership interest; (7) the partnership had not made or obtained any reliable projections for the proposed occupancy of the Eola Hotel; (8) some managing partners received payments from the partnership; (9) the partnership had no marketing plan for the hotel; and (10) the opening of the Eola Hotel was substantially delayed. As a result of Defendants' alleged securities violations, Plaintiff seeks recission of her general partnership interest and return of all money paid for or on account of such securities, less any amounts received. Plaintiff also seeks dissolution of the Natchez Hotel Company, alleging that the partnership has operated at a loss since its inception as a result of mismanagement and that there is no substantial likelihood that it will ever operate profitably.

## LAW

### *Is Plaintiff's general partnership interest a security?*

Defendants have moved to dismiss this suit pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) and 12(c), alleging that Plaintiff has failed to state a claim upon which relief can be granted. According to Defendants, Plaintiff did not purchase a security within the meaning of the Securities Act of 1933 or the Securities Exchange Act of 1934 and, if she did, then her claims are barred by the applicable statutes of limitations.[2]

The Securities Act of 1933, 15 U.S.C. § 77b(1), defines "security" as:

... any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, *investment contract*, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas or other mineral rights, or, in general, any interest or instrument commonly known as a "security" or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to

---

**2.** Although Defendants' Motion seeks dismissal or judgment on the pleadings pursuant to Rules 12(b)(6) and 12(c), Defendants submitted to the Court for its consideration matters outside the pleadings. According to Federal Rules of Civil Procedure Rule 12(b), a motion to dismiss for failure to state a claim will be automatically converted into a Rule 56 motion for summary judgment. *See also, Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.1981). Thus, in deciding Defendants' Motion, the Court must take all the Plaintiff's allegations as true and determine whether there are any genuine issues of material fact to preclude summary judgment. *Id.*

or purchase, any of the foregoing. [Emphasis added].

*See also,* the Securities Exchange Act of 1934, 15 U.S.C. § 78c(a)(10). To be a security, Plaintiff's general partnership interest must be an "investment contract."

According to the United States Supreme Court, an "investment contract" is a security if it is

> ... a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of a promoter or a third party.

*Securities and Exchange Commission v. W.J. Howey Company,* 328 U.S. 293, 298–99, 66 S.Ct. 1100, 1103, 90 L.Ed. 1244 (1946). The Fifth Circuit in *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.1981), elaborated on the *Howey* rule in the context of joint ventures and partnerships. According to *Williamson,* an interest in a joint venture or partnership may be a security if it involves:

> (1) an investment of money; (2) in a common enterprise; and (3) on an expectation of profits to be derived solely from the efforts of individuals other than the investor.

645 F.2d at 417–18 (quoting *Securities and Exchange Commission v. Koscot International, Inc.,* 497 F.2d 473 (5th Cir.1974)). The Fifth Circuit also reiterated that the word "solely"

> ... should not be read as a strict or literal limitation on the definition of an investment contract, but rather must be construed realistically so as to include within the definition those schemes which involve in substance, if not form, securities....

*Id.* at 418. (quoting *Securities and Exchange Commission v. Koscot International, Inc.,* 497 F.2d at 482). Thus, the Fifth Circuit adopted a more "realistic" test:

> whether the efforts made by those other than the investor are the undeniably significant ones, [that is] those essential managerial efforts which affect the failure or success of the enterprise.

*Id.* Indeed, as the Fifth Circuit recognized, the Supreme Court in *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975), omitted the word "solely" in its most recent formulation of the investment contract definition.

In *Forman,* the Supreme Court restated the *Howey* rule as "an investment in a common venture premised on a reasonable expectation of profit to be derived from the entrepreneurial or managerial efforts of others." 421 U.S. at 852, 95 S.Ct. at 2060. The Fifth Circuit in *Williamson* applied the *Forman* test to general partnerships and joint ventures and reasoned that although "an investor who claims his general partnership interest is an investment contract has a difficult burden to overcome," a general partnership interest can be designated as a security if the investor can establish that:

> (1) an agreement among the parties leaves so little power in the hands of the partner ... that the arrangement in fact distributes power as would a limited partnership; or (2) the partner ... is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership ... powers; or (3) the partner ... is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager or otherwise exercise meaningful partnership ... powers.

645 F.2d at 424.

Defendants argue that Plaintiff's general partnership interest does not fall within any of the exceptions announced in *Williamson* and, therefore, as a matter or law, they are entitled to judgment. Specifically, Defendants claim that the partnership agreement afforded each partner significant partnership powers and control; that Plaintiff warranted and represented to Defendants that she was experienced and knowledgeable in real estate investment and that she obtained qualified and experienced independent advice with respect to her investment (Art. III of the Partnership

Agreement); and that neither Plaintiff nor the partnership depended upon the unique talents of any individual partner.

Plaintiff, on the other hand, claims that her general partnership interest is a security under the *Williamson* test because the real rights and powers of the general partners under the partnership agreement are severely restricted and because Plaintiff is an unsophisticated investor who relied upon the business acumen of the Defendants. In fact, Plaintiff claims that the only reason Defendants used the general partnership form was to achieve accelerated depreciation and maximum tax benefits and to satisfy the demands of financial institutions for total recourse debt and not to provide partners with managerial powers.

The Court is of the opinion that, based upon the affidavits and deposition testimony reviewed by the Court, there is a genuine issue of material fact concerning whether Plaintiff's general partnership interest is a security. Specifically, the Court finds that at least the following genuine issues of material fact preclude the entry of judgment on Defendants' claim that Plaintiff's general partnership interest is not a security: (1) whether the partnership agreement is structured such that the partners' powers are synonymous with those of a limited partner or; (2) whether the Plaintiff is so inexperienced or unknowledgeable in business affairs that she was incapable of intelligently exercising her partnership powers; or (3) whether the Plaintiff was so dependent on the unique entrepreneurial or managerial ability of the managing partners that she was unable to exercise meaningful partnership powers. *See, e.g., McConnell v. Frank Howard Allen & Company,* 574 F.Supp. 781, 786 (N.D.Ca. 1983).

*If Plaintiff's interest is a security, are her claims barred by the applicable statutes of limitation?*

Assuming, without deciding, that Plaintiff's general partnership interest is a security, the Court next addresses Defendants' contention that Plaintiff's claims are barred by the applicable statutes of limitation.

Defendants submit that: (1) Plaintiff's failure to register claim is barred by the one and three year statutes of limitations contained in 15 U.S.C. § 77m (1981); (2) Plaintiff's claim for misrepresentations under 15 U.S.C. § 77*l* (2) (1981) is barred by the one and three year statutes of limitations in 15 U.S.C. § 77m; and (3) Plaintiff's claim for misrepresentation or fraud under Rule 10b–5 is barred by the applicable two year statute of limitation.

With regard to Plaintiff's failure to register claim, 15 U.S.C. § 77*l* (1) provides that any person who offers or sells a security in violation of 15 U.S.C. § 77e shall be liable to the person purchasing such security from him for the consideration paid for the security with interest and less any amounts received upon tender of the security or for damages if he no longer owns the security. Section 77e(a)(1) states that unless a registration is in effect as to a security, it shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise. Section 77m states that no action shall be maintained to enforce any liability created under § 77*l* (1) unless it is brought within one year after the violation upon which it is based. Section 77m further provides that in no event shall any action be brought to enforce liability created under § 77*l* (1) more than three years after the security was bona fide offered to the public.

Defendants argue that under § 77m, the date of the offer to sell commences the one year statute of limitation for failure to register claim under § 77*l* (1). This date, according to Defendants, was October 7, 1981, the date Plaintiff made her initial payment for her partnership interest and signed the partnership agreement. Since this action was filed December 14, 1984, Defendants maintain that the one year statute of limitation bars Plaintiff's failure to register claim. Alternatively, Defend-

ants argue that the three year statute of limitation contained in § 77m bars Plaintiff's failure to register claim because this suit was not brought within three years after the security was first offered to the public. Defendants claim that the alleged security was first offered to the public, if at all, at least by the time Plaintiff signed the partnership agreement on October 7, 1981.

With regard to Plaintiff's claim for misrepresentation under 15 U.S.C. § 77l (2), § 77l (2) provides that any person who offers or sells a security by use of any means or instruments of transportation or communication in interstate commerce or of the mails, by use of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary to make the statement not misleading shall be liable for the amount paid for such security plus interest and less any amounts received. Section 77m provides that an action to enforce liability created under § 77l (2) shall be brought within one year of discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence. Section 77m further states that in no event shall any such action be brought to enforce liability under § 77l (2) more than three years after the sale.

Defendants assert that Plaintiff did not file suit within one year of discovery of any untrue statements or omissions or within three years after the sale of the security on October 7, 1981, as required by § 77m. Defendants argue that the three year statute of limitations absolutely bars Plaintiff's claim since the suit was filed more than three years after the sale of the security. In any event, Defendants urge that Plaintiff should be deemed to have discovered

the alleged misrepresentations or omissions at the very latest at the time she began consulting attorneys about her partnership obligations in January through May 1983.

Likewise, Defendants argue that Plaintiff's Rule 10b–5 claim is barred by the applicable Mississippi two year statute of limitations, *Miss.Code Ann.* § 75–71–725 (Supp.1985), which commenced on the date Plaintiff discovered, or, in the exercise of due diligence, should have discovered, the Defendants' alleged fraudulent conduct. Defendants claim that the misrepresentations or omissions Plaintiff complains of should have been apparent on the date she signed the partnership agreement or, in any event, on September 24, 1982, when, according to Plaintiff's Complaint, the first cash call was made. Since Plaintiff failed to sue within two years of October 7, 1981, or September 24, 1982, Defendants maintain Plaintiff's Rule 10b–5 claim is barred.

In response to Defendants' contentions that the failure to register claim and the claim for misrepresentation under § 77l (2) are barred, Plaintiff states that, under the "investment decision doctrine," her claims are timely. According to Plaintiff, to acquire her interest in the partnership and to protect it from forfeiture [3], she made the following payments:

| DATE | AMOUNT |
|---|---|
| 11/18/81 | $90,000.00 |
| 1/1/82 | 60,000.00 |
| 9/24/82 | 25,000.00 |
| 5/3/83 | 50,000.00 |
| 8/18/83 | 20,000.00 |
| 10/15/83 | 10,005.00 |
| 12/29/83 | 33,350.00 |
| 1/17/84 | 75,037.50 |
| 5/31/84 | 30,218.63 |
| 7/19/84 | 28,709.58 |
| | $422,320.71 |

3. Section 4.2 of the partnership agreement provides that additional capital contributions may be required of the general partners. Section 4.3(d) provides that the failure of a general partner to pay a "cash call" shall result in "notice to the defaulting partner ... that his interest in the partnership is subject to forfeiture and transfer to the non-defaulting partners pro-rata ..." Additionally, § 4.1 of the partnership agreement provides that the "additional partners shall be obligated to contribute to the capital of the partnership ... in accordance with the schedule of installments set forth thereon ...; in the event a partner ... shall fail to pay any such [contribution] note ... the partnership shall be entitled to sell all or part of such partner's interest...."

The first two payments constituted the original $150,000.00 purchase price paid by the Plaintiff for her interest in the partnership. The remaining payments, Plaintiff claims, were "cash calls" paid as a result of new investment decisions in order to protect her interest from forfeiture. Plaintiff maintains that under the "investment decision doctrine," each payment by her of a "cash call" tolled the period of limitation for filing an action under federal and state securities laws.

With regard to her failure to register claim, Plaintiff asserts that, according to *Doran v. Petroleum Management Corporation*, 576 F.2d 91, 93 (5th Cir.1978), the one year statute of limitation commences upon the offer, sale, or delivery of the security—whichever occurs last. Thus, Plaintiff states that the statute of limitation commences on the day the sale of the security is completed. In this case, Plaintiff claims that, under the partnership agreement[4], the sale of the security was not complete until the capital contribution was paid in full. Plaintiff's initial "contribution" was paid in January 1982 but, she delivered her last payment for a cash call on July 19, 1984. Accordingly, Plaintiff maintains that the one year statute of limitation commenced on July 19, 1984, and, since her suit was filed December 14, 1984, her failure to register claim was timely filed within the one year statute of limitation. Plaintiff also argues that her claim for misrepresentation under § 77*l*(2) is timely for the same reason.

In support of her position that the "investment decision doctrine" tolls the statute of limitation for her failure to register claim and her claim for misrepresentation under § 77*l*(2), Plaintiff relies upon *Goodman v. Epstein*, 582 F.2d 388 (7th Cir. 1978). In *Goodman*, plaintiffs, limited partners, sued the general partners to recover damages suffered as a result of a limited partnership land development scheme which failed. Plaintiffs claimed defendants violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b)

(1976), and Rule 10b–5 of the Securities Exchange Commission, and that they committed common law fraud and breached fiduciary duties as a result of alleged misrepresentations made by the general partners in calling for funds under the terms of the limited partnership agreement. The jury returned a verdict in favor of all defendants.

On appeal, plaintiffs objected to a jury instruction given by the trial court which stated:

> ... [t]he purchase of such security occurred when such a plaintiff was committed or obligated by agreement to acquire such interest, even if such plaintiff was to perform his or her obligation under the agreement, after a lapse of time, *each subsequent contribution made pursuant to such an agreement does not constitute a purchase of a security.*

582 F.2d at 398. [Emphasis supplied in original]. Plaintiffs argued that the instruction peremptorily directed the jury that only the limited partnership agreement itself could be considered the "purchase" of a security when the original "commitment" to the limited partnership was not the final investment decision to be made during the life of the limited partnership. Specifically, plaintiffs claimed that each call for capital by the general partners required the limited partners to make a separate investment decision. According to plaintiffs, upon receipt of a capital call, the limited partners could: (1) comply with the call; (2) abandon the project; (3) sell his limited partnership interest; (4) refuse to pay the capital call and defend a suit by the general partners for breach of the limited partnership agreement; (5) file a declaratory judgment action ending his obligations to the limited partnership; or (6) file an action to dissolve the partnership and seek return of prior contributions. As such, plaintiffs maintained that their action was timely filed within the three year statute of limitation. *Id.* at 409, n. 63.

---

**4.** See note 3 *supra*.

The Seventh Circuit agreed that the jury instruction constituted an improper peremptory direction to the jury directing them that only the limited partnership agreement itself could be considered the purchase of a security. The court held that such a peremptory direction, "... under the peculiar circumstances of this case," clearly eliminated any chance of a verdict for the plaintiffs. *Id.* at 409. According to the Seventh Circuit, the "commitment doctrine" enunciated by the Second Circuit in *Radiation Dynamics, Inc. v. Goldmuntz,* 464 F.2d 876 (2d Cir.1972) [5], was not applicable because

> [w]hat we have here is *not* a one-shot deal. The [general partners] were required ... to perform certain management functions which were the primary determinants of the value of the security sold. Most of these management functions were to be performed after the execution of the Limited Partnership Agreement and contributions of capital (though they could have been expressly lumped into one up-front payment) were spaced out, "from time-to-time," over the course of the management's performance. The parties clearly envisioned an on-going relationship under the agreement with the management making all of the decisions affecting the basic value of the enterprise and its chances of progressing toward its advertised goal. Because of this ongoing relationship and the fact that the entire $3,000,000 for Phase I was not collected "up front" but was contributed "from time-to-time" as Phase I progressed ..., the purchasers were left with the possibility of an investment decision each time a call was made. *Id.* at 412–13.

Accordingly, the court held that:

> ... [W]hen an investment decision remained to be made at the time of a call for a capital contribution by a Limited Partner ..., the contribution by each Limited Partner in response to the call

constituted a separate "purchase" of a security....

*Id.* at 414. The court also noted that its conclusion regarding the "investment decision doctrine" was in accord with the position of the Securities Exchange Commission. *Id.* at 414. Rule 136(a) of the Security Exchange Commission's General Rules and Regulations under the Securities Act of 1933, 17 C.F.R. § 230.136 (1976), provides that a sale of a security occurs when the holder of assessable stock pays or agrees to pay "all or any part of such assessment." Rule 136(c) provides that "assessable stock" is that which allows the issuer to repurchase the stock if the shareholder fails to meet the assessment call. The shareholder is "committed" to meet the assessment call; but his option to return the stock to the issuer in lieu of meeting the assessment requires an investment decision on his part.

Plaintiff here also argues that her general partnership interest is akin to assessable stock. Defendants claim that Plaintiff's analogy is misplaced because with assessable stock or a limited partnership interest, failure to pay the assessment or capital call merely results in the loss of the security. Here, Defendants state, Plaintiff's failure to meet a cash call would not only cause forfeiture of her interest but also would continue personal liability as a general partner for the amount of each cash call. Since Plaintiff remains personally liable, as a general partner, for each cash call, the Court finds that her general partnership interest is not similar to assessable stock or a limited partnership interest where default results only in the loss of the security.

In *Hill v. Equitable Bank, National Association,* 599 F.Supp. 1062 (D.Del.1984), a case cited by Defendants, the Delaware District Court examined the "investment decision doctrine" and declined to fully adhere to *Goodman.* In *Hill,* plaintiffs sued defendant, alleging that they were fraudulently induced to purchase interests in two

---

**5.** *Radiation Dynamics* held that the time of the "purchase or sale" of securities within the meaning of Rule 10b–5 is to be determined as the time when the parties to the transaction are committed to one another.

limited partnerships through various misrepresentations concerning the soundness of the investment in violation of the antifraud provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934. Defendant moved to dismiss on the grounds that plaintiffs' federal securities claims were time-barred and failed to state valid claims under the securities laws. With regard to the statute of limitation issue, the parties agreed that a Rule 10b–5 cause of action accrues on the date that the sale or purchase of securities occurred; but they disagreed as to when the purchase of the securities occurred. Defendant contended that the purchase occurred when the plaintiffs entered into their subscription agreement. Plaintiffs contended that each installment payment on the purchase price of their interest constituted separate purchases of partnership interest. Citing *Radiation Dynamics*, the court stated that, generally, a purchase or sale of a security occurs on the date that a party enters into a binding commitment to undertake a securities transaction even though full performance of the transaction does not occur until a later date. However, the court recognized that

> ... if a party enters into an agreement to undertake a securities transaction but, prior to full performance of the transaction, the party possesses the power to terminate it, the party may be viewed as making an investment decision at each point the party possesses the power to terminate the transaction but chooses to go forward. Each such investment decision may be viewed as a purchase or sale of securities separate and apart from the initial agreement to undertake the transaction.

*Id.* at 1072.

Plaintiffs contended that under the limited partnership agreement they possessed the means, as limited partners, to terminate their payment obligations since they could have amended the agreements, dissolved the partnerships, sold their shares or rescinded their purchases on the grounds of fraud. With regard to plaintiffs' option to sell their shares or rescind their purchases, the court noted that "[t]hese options ... cannot provide the basis for a claim under the investment decision doctrine" because

> [t]he investment decision doctrine applies only to options that allow a party to avoid going forward with the purchase (or sale) of securities. [citations omitted].

*Id.* at 1073, n. 11. A sale of shares by plaintiffs would not have terminated their purchase obligations because, as the court reasoned, plaintiffs' option to sell their shares necessarily presumed that plaintiffs had purchased their shares and possessed the ownership rights to sell them. Thus, the court concluded that, at most, a sale of shares would have resulted in an assignment of plaintiffs' payment obligations and not a termination of such obligations.

Likewise, the court determined that plaintiffs' recission of their purchases could not provide the basis for a claim under the investment recision doctrine. Recission, the court said, would terminate plaintiffs' purchase obligations. However, the court stated that recission was a right available to plaintiffs even if they had fully paid for their shares at the time of entering the subscription agreement. Thus, the court concluded that:

> [i]f a party enters into an otherwise legally binding commitment to purchase securities, the applicability of the investment decision doctrine should not arbitrarily turn upon how purchase payments are structured under the transaction.

In conclusion, the Delaware Court held that to state a claim under the investment decision doctrine,

> ... plaintiffs must establish not only that they possessed options to avoid their payments, but also that they would have exercised these options if fraud had not occurred or if they had discovered the fraud.

*Id.* at 1074. However, since there was a question of fact concerning the relationship between the subscription agreements and

the partnership agreements and what options the plaintiffs possessed under each, the court determined that it could not grant defendants' motion to dismiss.

In *Ingenito v. Bermec Corporation,* 376 F.Supp. 1154 (S.D.N.Y.1974), another case relied on by Defendants, the plaintiffs claimed securities law violations arising out of agreements whereby the plaintiffs purchased cattle for which they received certificates of title for each animal, and entered into maintenance contracts for the care of the cattle. Plaintiffs financed the purchase price by paying a cash down payment and executing promissory notes. In response to a motion to dismiss, the plaintiffs claimed that each payment on the maintenance contracts and the promissory notes constituted the sale of new securities for purposes of their § 10(b) misrepresentation claim.

The court concluded that payments under the maintenance contracts—but not the promissory notes—were "sales" for purposes of plaintiffs' § 10(b) claims. In so ruling, the court found that the maintenance contracts were similar to assessable stock since the contracts could be cancelled and since an investor's cattle could be sold if the investor failed to make payments due under the investment contract. The court reasoned that the payments under the maintenance contracts fell within the decisions in *Gross v. Independence Shares Corporation,* 36 F.Supp. 541 (E.D.Pa.1941) and *Securities Exchange Commission v. North American Finance Company,* 214 F.Supp. 197 (D.Ariz.1957). The crux of those decisions is that

> ... plaintiffs' rights to continue purchasing the installments on their contracts, or to cancel at their option, amounted to a *series* of investment decisions to purchase (with a corresponding increase in their equity in the issuer) and, accordingly, a *series* of sales by the issuer.

*Id.* at 1184 [Emphasis supplied in original].

In *Bermec,* the court found that

> [e]ach payment [under the maintenance contracts] involved additional investment in the investment contracts, in the hope

of increasing the investor's equity in the form of healthier, larger, stronger cattle and additional progeny. Indeed, the maintenance contract was the pivot on which investor expectations turned, since *only* by maintaining the herds could their equity "grow," or even "survive." Conversely, the choice to cancel the maintenance contract, assign it to another cattle farm or liquidate the herd involved an investment choice as well, since it represents a decision to redeploy capital in other, more profitable, enterprises.

*Id.* at 1184 [Emphasis supplied in original]. However, the court found that application of the same principal to determine whether payments under the promissory notes constituted sales of securities led to a different result. The court concluded that purchasers received the underlying certificates of title covering his herd at the time of the underlying transaction and that

> ... the interest was purchased at the time of the initial sale and the rights and obligations of the parties were fixed at the time of the making of the note.

*Id.* Continuing, the court stated:

> [e]ach payment [under the promissory note] represented not the creation or assumption of new obligations, but the fulfillment of those previously created. There is substantial economic and legal difference between the note payments and the maintenance payments. Each payment on a maintenance contract represented a fresh decision to further invest ...; the herdowner "bought" something each month which he did not own before which, by virtue of the cancellation clause, he was not obligated to buy. The same is not true of the note payments.
>
> \* \* \* \* \* \*
>
> [T]hey already had title to the cattle at the point of the underlying sale, and except in a purely technical sense, acquired nothing additional by their payment; and

second, their obligation to pay was fixed and non-cancellable.

*Id.*

In *Roth v. Bank of Commonwealth*, Fed.Sec.L.R. '81–'82 ¶ 98, 267 (W.D.N.Y. 1981), plaintiffs claimed they were fraudulently induced to enter into a cattle investment scheme for the purchase and maintenance of Polled Herefords by four different prospectuses which allegedly contained misrepresentations and omissions of fact in violation of federal and state securities laws. Defendants moved to dismiss on the grounds that plaintiffs' § 12(2) misrepresentation claim was time-barred. In response, plaintiffs contended, in reliance upon *Ingenito*, that continuing "sales" of securities occurred throughout the term of the maintenance agreement and, therefore, their action was timely. Plaintiffs based their contention on the fact that the maintenance agreement could be terminated upon thirty days' notice. According to plaintiffs, an investor's decision not to cancel the maintenance agreement, coupled with payment to the ranch in the form of transfer of title to progeny of the cattle for maintenance costs, constituted a new investment or sale of securities.

The court, distinguishing *Ingenito*, found that no new investment or sale of securities was present. In so ruling, the court reasoned that *"Ingenito's* analogy between assessable stock and the cattle maintenance agreement is inopposite to the present case." *Id.* at 91,710. The court explained that, unlike the investors in *Ingenito:*

... plaintiffs were not required to make any monthly payment to the ranch for maintenance of the cattle. Thus, there has been no periodic assessment against the cattle owned by plaintiffs herein. The ranch received compensation for its care of the cattle by taking a portion of the progeny.

\* \* \* \* \* \*

The mere fact that the maintenance agreement could be terminated does not render the investment contract an ongoing sale of securities. *Ingenito* itself recognized that a cancellation clause is not a contract to sell securities. Thus, the crucial factors in *Ingenito* appear to have been that investors were required to make monthly maintenance payments to the ranch and that, if the investor failed to make such payments, his investment could be forfeited. These facts are not present in this case.

*Id.* at 91,710. Accordingly, the court found that there were no "payments" which increased plaintiffs' equitable interest and, therefore, the performance of plaintiffs' obligations under the investment contract constituted a single sale of a security.

In the case *sub judice*, Plaintiff claims that her action is timely because, under the partnership agreement, ownership of the security did not fully vest and the sale of the security was not completed until the capital contribution was paid in full. Plaintiff contends that the statute of limitation should run from the last cash call in July 1984 because each cash call required a new "investment decision" and involved the sale or purchase of a new security.

The Court is of the opinion that, under the facts of this case, ownership of the security fully vested on October 7, 1981, when Plaintiff acquired her partnership interest. The subsequent cash calls met by Plaintiff did not constitute new "sales" or "purchases" of securities. The payments did not represent the creation or assumption of new obligations, but the fulfillment of obligations previously created. By making the cash calls, Plaintiff merely protected her interest from forfeiture. She did not increase or enhance her partnership interest. In the event Plaintiff failed to pay a cash call, under § 4.3 of the partnership agreement, she remained liable for the amount of the cash call. Moreover, as previously explained, Plaintiff's partnership interest is not analogous to assessable stock. Accordingly, each cash call did not require a new "investment decision" since Plaintiff was obligated to make the payment and remained liable in the event of nonpayment despite forfeiture of her interest. Thus, the one year statute of limitation was not tolled by the "investment deci-

sion doctrine" and Plaintiff failed to meet the one year statute of limitation on her failure to register claim and her claim for misrepresentation under § 77*l* (2). Only the three year statute of limitations contained in § 77m can now salvage Plaintiff's claims for failure to register and misrepresentation under § 77*l* (2).

■ As previously stated, a claim for failure to register a security must not only be brought within one year after the alleged violation, but it must also be brought within three years after the security was bona fide offered to the public. 15 U.S.C. § 77m. According to *Summer v. Land and Leisure, Inc.*, 664 F.2d 965, 968 (5th Cir.1981), *cert. denied*, 458 U.S. 1106, 102 S.Ct. 3484, 73 L.Ed.2d 1367 (1982), the three year statute of limitation is an absolute bar which cannot be tolled in any manner.

Plaintiff claims suit was filed within three years of a bona fide offering to the public because there could be no "offer" to the public until bank funding was obtained and closed which did not occur until approximately December 22, 1981. Defendants argue that Plaintiff confuses her purchase of the partnership interest with the partnership's purchase of the hotel and that "bona fide" should be interpreted as the date on which the security was actually made available to the public for purchase and sale. According to Defendants, partnership interests were purchased between September 1980 and October 1982. Plaintiff's partnership interest was purchased October 7, 1981. Thus, Defendants contend the three year statute of limitation expired October 7, 1984, and that Plaintiff's suit filed December 14, 1984, is untimely.

The Court concludes that the partnership interests were bona fide offered to the public at least by October 7, 1981, when Plaintiff purchased her interest. The underlying purchase of the hotel by the partnership is irrelevant to the issue of when the alleged security was bona fide offered to the public. Accordingly, Plaintiff's claim for failure to register is time barred.

■ With regard to Plaintiff's claim for misrepresentation under § 77*l* (2), § 77m provides that an action must be commenced no more than three years after the sale. Plaintiff relies upon the "investment decision doctrine" as support for her position that she timely sued within the three year statute of limitation. For reasons previously stated, the "investment decision doctrine" does not extend the three year statute of limitation beyond the date of the sale of the partnership interest to Plaintiff on October 7, 1981. Accordingly, Plaintiff's claim for misrepresentation under § 77*l* (2) is time-barred.

Finally, Defendants argue that Plaintiff's claim for misrepresentation and fraud under Rule 10b–5 is barred by the applicable two year statute of limitation. Since Rule 10b–5 does not specify a statute of limitation, the state statute of limitation applies. In this case, *Miss. Code Ann.* § 75–71–725 (Supp.1985) provides for a two year statute of limitation for the illegal or fraudulent sale or offer of a security.

■ Although state law determines the applicable statute of limitation, federal law determines when a cause of action accrues so as to trigger the statute of limitation. *Sargent v. Genesco, Inc.*, 492 F.2d 750, 758 (5th Cir.1974). According to *Azalea Meats v. Muscat*, 386 F.2d 5, 8–9 (5th Cir.1967), a cause of action under Rule 10b–5 accrues and the statute of limitation begins to run when a party has "notice of facts which, in the exercise of due diligence, would have led to actual knowledge of the violation." Defendants claim that all of the "frauds" alleged by Plaintiff are matters discussed in the partnership agreement and that had Plaintiff read the partnership agreement she would have been aware of the alleged "frauds." Plaintiff submits that she never saw a copy of the partnership agreement until she signed it and that she did not receive her copy until sometime later. As such, Plaintiff claims that she was not able to discover the fraud until sometime after signing the agreement.

■ The Court is of the opinion that at least the issue of Plaintiff's due diligence in discovering the fraud constitutes an issue of fact that cannot be resolved by this Court. Moreover, based upon the allega-

248

tions in Plaintiff's Complaint, she alleges some misrepresentations or omissions which would not be apparent from a reading of the partnership agreement. Accordingly, the Court denies Defendants' Motion, at this time, with regard to Plaintiff's Rule 10b–5 claim.

■ Defendants also seek dismissal of Plaintiff's state law securities claims since jurisdiction over Plaintiff's state law claims depends on Plaintiff's federal claims. Defendants do not enumerate further, nor did Plaintiff respond. Since there exists a question of fact concerning whether Plaintiff has a federal cause of action, i.e., whether Plaintiff purchased a security, the Court will deny Defendants' Motion with regard to Plaintiff's state law claims at this time.

In summary, the Court rules that there is a question of fact to be resolved by the jury regarding whether Plaintiff's general partnership interest is a security; if her interest is a security, then her failure to register claim and her claim for misrepresentation under § 77$l$ (2) are time barred; there is a question of fact with regard to whether Plaintiff's Rule 10b–5 claim is time barred; and Plaintiff's state law claims will remain at this time.