Floyce L. **FORTENBERRY**, As Conservator of the Estate of Frank Adams Fortenberry, Plaintiff,

v.

**FOXWORTH CORPORATION** and Thomas "Arny" Rhoden, Individually and As a Director and Officer of the Foxworth Corporation, Defendants.

Civ. A. No. H90–0116(W).

United States District Court,
S.D. Mississippi,
Hattiesburg Division.

June 9, 1993.

John W. Barrett, Lexington, MS, Alexander A. Alston, Jr., Jackson, MS, for plaintiff.

Robert B. Bieck, Jr., T. Michael Twomey, M. Megan Shemwell, New Orleans, LA, Mark A. Nelson, Hattiesburg, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before this court is defendants' motion to dismiss this lawsuit under Fed.R.Civ.P. 12(b)(1)[1] on the basis that this court lacks subject matter jurisdiction over the dispute in issue. The principal dispute here between the parties is whether the defendants are liable to plaintiff under plaintiff's federal cause of action brought under the Securities Exchange Act of 1934, Section 10(b) (hereinafter "§ 10(b)"), codified at 15 U.S.C. § 78j(b)[2] and under Securities Exchange

---

1. **Rule 12. Defenses and Objections—When and How Presented—By Pleading or Motion—Motion for Judgment on the Pleadings**
(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted.

2. **§ 78j. Manipulative and deceptive devices**
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
\* \* \* \* \* \*
(b) To use or employ, in connection with the purchase or sale of any security registered on a

Commission Rule 10b–5; codified at 17 C.F.R. § 240.10b–5 [3] (hereinafter "Rule 10b–5").. Defendants' motion to dismiss attacks plaintiff's timeliness in bringing this lawsuit. More specifically, defendants contend that plaintiff filed this lawsuit beyond the applicable statute of limitations, which according to defendants is two years. Plaintiff, on the other hand, argues that the appropriate period of limitation is six years, which, if correct, would save this lawsuit filed almost six years after the occurrences in dispute. So, the key issue here is readily identified: in a federal district court sitting in Mississippi, what is the requisite period of limitations for a lawsuit filed pursuant to § 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 of the Securities Exchange Commission Rules? While the question is easily framed, the construction of the answer requires a much greater expenditure of thought, primarily because § 10(b) and Rule 10b–5 carry no congressionally-fixed statute of limitations and because in the last two years both the United States Congress and the United States Supreme Court have spoken on the issue, but not in blended, harmonious voices.

### PARTIES AND JURISDICTION

The plaintiff here, Floyce L. Fortenberry (hereinafter "plaintiff"), is the conservator and wife of Frank Adams Fortenberry (hereinafter "Mr. Fortenberry") and is an adult citizen of Mississippi. The corporate defendant, the Foxworth Corporation (hereinafter "Foxworth Corporation"), is a corporation organized and existing under the laws of Mississippi. Defendant Thomas "Arny" Rhoden (hereinafter "Rhoden") is an adult citizen of Mississippi, as well as an officer, major shareholder, and the director of the Foxworth Corporation.

Plaintiff's complaint alleges that Mr. Fortenberry was defrauded by the defendants in violation of § 10(b) and Rule 10b–5. Her complaint also charges state law claims, that the defendants: violated the Mississippi Securities Act, specifically Miss.Code Ann. § 75–71–501 [4] (hereinafter § 501); committed common law fraud; breached their fiduciary duties; and intentionally inflicted emotional distress. Defendants deny all of the plaintiff's claims and assert, moreover, that all of plaintiff's claims are time-barred.

Plaintiff's federal claims under § 10(b) and Rule 10b–5 are before this court pursuant to federal question jurisdiction, 28 U.S.C. § 1331.[5] Plaintiff's state claims are here pursuant to this court's pendent jurisdiction. *See United States Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

3. It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

4. § 75–71–501. **Fraud or deceit in connection with offers, sales or purchases.**

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly,

(1) To employ any device, scheme or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

5. § 1331. **Federal question; amount in controversy; costs**

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States.

## FACTS

On September 7, 1984, Mr. Fortenberry, a long-time principal with the Bank of Foxworth and a shareholder in the Foxworth Corporation, sold his four shares of Foxworth Corporation common stock back to the Foxworth Corporation via the defendant Thomas Rhoden. The written and recorded "conveyance and agreement" reflects that as consideration for the transfer of Mr. Fortenberry's stock back to the Foxworth Corporation, the defendants promised to make monthly payments of $2,000.00 to Mr. Fortenberry, then 74 years of age, for the remainder of his life. Claiming that the aggregate value of the stock at issue was at least $300,000.00,[6] plaintiff alleges that the "sell back" was for grossly insufficient consideration.

Plaintiff further contends that, at the time of the transaction, Mr. Fortenberry was suffering from Alzheimer's disease and has been so afflicted since 1983. Plaintiff accuses the defendant Rhoden of exploiting his friendship with a mentally debilitated Mr. Fortenberry, by making fraudulent, material misrepresentations to Mr. Fortenberry and by fraudulently concealing material facts which Rhoden had a duty to disclose to Mr. Fortenberry in order to defraud Mr. Fortenberry of his shares of Foxworth Corporation stock.

The plaintiff avers that she was unaware of this transaction until it was accidentally discovered by her accountant, over five years later, on an unspecified date in 1990. On June 4, 1990, the plaintiff was appointed as the conservator of Mr. Fortenberry's estate. That same order adjudged Mr. Fortenberry to be by reason of his advanced age and mental weakness incapable of handling his own affairs. On June 6, 1990, the plaintiff filed her original complaint. On July 30, 1990, the plaintiff filed her amended complaint which added a count alleging the intentional infliction of emotional distress.

## PROCEDURAL HISTORY

When Congress enacted § 10(b) of the Securities Exchange Act of 1934, for whatever reason, Congress failed to include an applicable period of limitations. This omission behooved the courts to move into this vacuum and breathe a judicially determined period of limitations into the Act. The circuits have been uniform in their appreciation of the problem, but diverse in their approach.

Some circuits have adopted a uniform federal limitation period from expressed limitation periods in the Securities Act of 1933 and in provisions of the Securities Exchange Act of 1934 other than § 10(b). These circuits apply a limitation period of one year from plaintiff's discovery of the alleged violation, and three years from the occurrence of the alleged violation. *See Ceres Partners v. GEL Assoc.,* 918 F.2d 349, 360 (2nd Cir.1990); *In re Data Systems Securities Litigation,* 843 F.2d 1537 (3rd Cir.), *cert. denied sub nom. Vitiello v. I. Kahlowsky & Co.,* 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988); *Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385 (7th Cir.1990); *General Builders Supply Co. v. River Hill Coal Venture,* 796 F.2d 8, 10 (1st Cir.1986); *O'Hara v. Kovens,* 625 F.2d 15 (4th Cir.1980); *Silverberg v. Thomson McKinnon Securities, Inc.,* 787 F.2d 1079, 1081 (6th Cir.1986); *Herm, et al. v. Stafford, et al.,* 663 F.2d 669, 677 (6th Cir.1980); *Morris v. Stifel, Nicolaus & Co., Inc.,* 600 F.2d 139 (8th Cir.1979); *Nesbit v. McNeil,* 896 F.2d 380 (9th Cir.1990); *Robuck v. Dean Witter & Co.,* 649 F.2d 641 (9th Cir.1980); *Bath v. Bushkin, Gaims, Gaines & Jonas,* 913 F.2d 817 (10th Cir.1990); *Wachovia Bank and Trust Co., et al. v. National Student Marketing Corporation, et al.,* 650 F.2d 342, 344 (D.C.Cir.1980); *Forrestal Village, Inc. v. Graham,* 551 F.2d 411 (D.C.Cir.1977).

Most circuits, including the Fifth Circuit, instead have adopted state limitation periods through the so-called "absorption" doctrine,

---

**6.** Plaintiff claims that the defendant Foxworth Corporation itself placed this $300,000.00 value upon the stock in the course of a securities maneuver known as a "reverse stock split." Plaintiff further argues that the monthly payments of $2,000.00 is less than the reasonable interest that could have been obtained had the value of the stock been invested in certificates of deposit or "other reasonable investments." According to the plaintiff, the defendants could pay the $2,000.00 monthly amount due Mr. Fortenberry from interest alone and keep the entire principal for themselves.

whereby federal trial courts hearing federal actions without their own limitation periods adopt the limitation period of the state cause of action most analogous to the language and purpose of the federal statute or rule. *See Reed v. United Transportation Union*, 488 U.S. 319, 327, 109 S.Ct. 621, 627, 102 L.Ed.2d 665 (1989).

Since this Circuit, the Fifth Circuit Court of Appeals, champions the absorption doctrine, this court saw its obligation to determine first which Mississippi statute or common law cause of action is most analogous to § 10(b) and Rule 10b–5 claims and then to apply its period of limitation to this action. The parties argued accordingly.

The plaintiff argued that the Mississippi cause of action which bore the closest substantive resemblance to § 10(b) and Rule 10b–5 was Mississippi's common law fraud action, relying primarily on the fact that both § 10(b) and Rule 10b–5 and common law fraud required scienter. As supportive authority, the plaintiff relied upon the Fifth Circuit cases of *In re Sioux, Ltd., Securities Litigation v. Coopers & Lybrand*, 914 F.2d 61, 64 (5th Cir.1990), and *Wood v. Combustion Engineering, Inc.*, 643 F.2d 339, 341–346 (5th Cir.1981), which held that Texas' general fraud statute bore a closer substantive resemblance to § 10(b) and Rule 10b–5 actions than Texas' Blue Sky Laws.

Alternatively, the plaintiff argued that if this court eschewed the six-years limitation period of common law fraud and applied the two-year limitations period proposed by defendants, the action, nevertheless, has been tolled by Mr. Fortenberry's alleged mental disability pursuant to Miss.Code Ann. § 15–1–59 [7] (hereinafter § 59) and/or Mr. Fortenberry's alleged fiduciary relationship with the defendant Rhoden.

The defendants presented contrary arguments. Firstly, the defendants urged this court to adopt the uniform federal limitations period (a one-year statute of limitations and a three-year statute of repose) followed by other circuits. Secondly, in the event this court chose not to follow that course, the defendants argued that Miss.Code Ann. §§ 75–71–501 [8] (hereinafter § 501) and 75–71–717 [9] (hereinafter § 717) (both sections are components of Mississippi's Securities Act, located at Title 75, Chapter 71 of the Mississippi Code Annotated) bore the closest substantive resemblance to § 10(b) and Rule 10b–5. Relying on the Fifth Circuit's "commonality of purposes" test for borrowing limitation periods from analogous state statutes and noting the similarity of language and purpose between § 501 and § 717 and § 10(b) and Rule 10b–5, the defendants maintained that a two-year limitation period, which they say expressly applies to § 717,

---

**7. § 15–1–59. Saving in favor of persons under disabilities.**

If any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than twenty-one years.

**8.** *See, supra*, p. 1268.

**9. § 75–71–717. Liability to buyers for illegal or fraudulent sales or offers.**

(a) Any person who (1) offers or sells a security in violation of Section 75–71–117(a), 75–71–301 or 75–71–401, or of any rule or order under Section 75–71–113 which requires the affirmative approval of sales literature before it is used, or of any condition imposed under

Section 75–71–405(d) or 75–71–417, or (2) offers or sells a security by the use of any written or oral communication which contains any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent (8%) per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at eight percent (8%) per year from the date of disposition.

should govern the instant cause of action. Defendants also pointed out that, with the exception of cases originating in Texas, most Fifth Circuit cases applying the "commonality of purposes" test have found that the respective state blue sky laws bore a closer substantive resemblance to § 10(b) and Rule 10b–5 actions than to state fraud actions. *Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir.1988) (recognized that federal district courts in Louisiana had previously applied Louisiana's blue sky law prescriptive period to § 10(b) and Rule 10b–5 claims); *White v. Sanders,* 650 F.2d 627, 629–33 (5th Cir.1981) (compared Alabama's common law fraud action and Alabama's "catch-all" limitation period with Alabama's blue sky law and held that the blue sky law most closely resembled § 10(b) and Rule 10b–5 actions and better effectuated relevant federal policy).

The above arguments seemingly were rendered moot on June 20, 1991, when the Supreme Court handed down its decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). The *Lampf* Court rejected the practice of borrowing state statutes of limitations for § 10(b) and Rule 10b–5 actions and instead imposed a uniform one-year statute of limitation and three-year statute of repose on all federal securities claims brought pursuant to § 10(b) and Rule 10b–5. *Lampf,* at —— – ——, 111 S.Ct. at 2781–82.

On the same day, the Supreme Court decided *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, ——, 111 S.Ct. 2439, 2441, 115 L.Ed.2d 481 (1991), wherein the Court held that any rule which is retroactively applied to a party in a case before the Court should be retroactively applied to all other similarly situated parties. The effect of *Beam* was to apply *Lampf's* one-year statute of limitations and three-year statute of repose to all pending § 10(b) and Rule 10b–5 claims, including the claims at issue here. *See Lufkin v. McCallum,* 956 F.2d 1104, 1108 (11th Cir.1992). Thereafter, in the wake of *Lampf* and *Beam,* the defendants confidently reasserted their argument that plaintiff's § 10(b) and Rule 10b–5 claims were time-barred.

However, before this court could rule on the defendants' motion to dismiss under the *Lampf/Beam* duo, Congress stepped in and enacted the F.D.I.C. Improvement Act of 1991, P.L. 102–242 §§ 476, § 27A, 105 stat. 2236. Section 27A(a) of that statute provides as follows:

Sec. 27A(a) **Effect on Pending Causes of Action**

The limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

This statutory amendment makes *Lampf's* one-year statute of limitation and three-year statute of repose scenario prospective only, notwithstanding the holding in *Beam* that *Lampf* would be applied retroactively to all pending cases involving § 10(b) and Rule 10b–5 claims.

Enactment of § 27A(a) appears to have been prompted by Congressional concern over the effect of the *Lampf/Beam* holdings on pending §10(b) and Rule 10b–5 claims. Many pending federal securities claims were cut off by *Lampf* and *Beam* since the state-specific limitation periods, adopted under the "absorption" scheme, were, in most cases, longer than the uniform federal period imposed by *Lampf* and *Beam.* Supposedly, the retroactive application of *Lampf* would result in the dismissal of pending multi-billion dollar federal securities actions. The legislative history of § 27A reveals strong concern by its drafters that retroactive application of *Lampf* would lead to the dismissal of "over four billion dollars of fraud claims,...." *In re Brichard Sec. Litig.,* 788 F.Supp. 1098, 1105 (N.D.Cal.1992) (quoting 137 Cong.Rec. § 11,812 (daily ed. Nov. 26, 1991) (statement of Rep. Markey)). By limiting *Lampf* to prospective application, Congress insured that pending high-stakes securities actions would not be time-barred.

Section 27A, then, reinstates the previous statute of limitation schemes for pending § 10(b) and Rule 10b–5 claims and restores such claims which were time-barred by the combined effect of *Lampf* and *Beam.* So, if

§ 27A be constitutional, the instant cause of action is back to square one, and this court must determine what Mississippi statute or cause of action bears the closest substantive resemblance to § 10(b) and Rule 10b–5 actions. Predictably, however, the defendants argue that § 27A(a) is unconstitutional in that allegedly it violates the separation of powers doctrine, as well as the Due Process and Equal Protection guarantees of the Fifth Amendment.

## CONSTITUTIONALITY OF § 27A

The instant cause of action was filed before June 19, 1991. Therefore, this court must follow the clear language of § 27A(a) of the statute, ignore the *Lampf* and *Beam* decisions and apply the law of the Fifth Circuit as it existed on June 19, 1991, if § 27A is constitutional.

 Before examining the constitutionality of § 27A(a), this court notes the following tenets of statutory construction. First, the principles of statutory construction require that a court uphold a statute if the court may interpret the statute in a constitutionally valid manner. Further, courts should narrowly construe legislation to avoid invalidating such on constitutional grounds unless the court's construction is clearly contrary to the intent of Congress. *Rust v. Sullivan,* ── U.S. ──, ──, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (U.S.1991). *See Communications Workers v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988); *Chevron v. NRDC,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

## SEPARATION OF POWERS

 Defendants raise two objections to § 27A(a) under the separation of powers doctrine. First, they contend that § 27A(a) violates the separation of powers doctrine because the statute improperly prescribes a rule of decision for the federal courts. Specifically, the argument is that Congress improperly has directed the federal courts to ignore the Supreme Court's holdings relative to § 10(b) and Rule 10b–5. According to defendants, Congress improperly has acted as a "super-appellate" court.

Secondly, as suggested by defendants, § 27A(a) is arguably unconstitutional because Congress has directed the courts to reach a specific result as to pending claims. *See Walker v. United States Department of Housing and Urban Development,* 912 F.2d 819, 828–29 (5th Cir.1990), citing *United States v. Klein,* 80 U.S. (13 Wall.) 128, 20 L.Ed. 519 (1872). *Klein* established that Congress may amend or repeal existing law and thereby effect pending cases so long as Congress does not direct courts to make specific factual findings or particular applications of law to fact. *Klein,* 80 U.S. at 147; *see also Robertson v. Seattle Audubon Society,* ── U.S. ──, ──, 112 S.Ct. 1407, 1413, 118 L.Ed.2d 73, 84 (1992).

In spite of the above arguments, this court finds that § 27A(a) does not encroach upon the judiciary's Article III authority. Defendants' characterization of § 27A(a) is myopic. Section 27A(a) is merely an amending statute wherein Congress, in effect, has overruled the Supreme Court's interpretation of an earlier Congressional statute, i.e., the Securities Exchange Act of 1934. *Henderson,* 971 F.2d at 1571–72, n. 4. "If Congress disagrees with the Supreme Court's interpretation, it is free to amend the statute as it sees fit." *Id.* This reflects the normal practices of the federal system. *Id.* "Congress, having created statutes of limitation, can exercise its constitutional power to alter the jurisdiction of the federal courts by amending or wholly abolishing them." *Arioli, et al. v. Prudential–Bache, et al.,* 800 F.Supp. 1478, 1483 (E.D.Mich.1992). The effect of the amendment is not to establish a finding of fact or rule of decision for a particular case or cases. Rather, the amendment restores a limitations period for all pending causes of a certain type instead of deciding the outcome of any particular case.

In *Robertson v. Seattle Audubon Society,* ── U.S. ──, 112 S.Ct. 1407, 118 L.Ed.2d 73, the Supreme Court unanimously rejected the same sort of separation of powers challenge advanced by the defendants here in a factually analogous situation. *Robertson* involved challenges by environmental organizations and logging companies to Congress'

enactment of the Northwest Timber Compromise. The Compromise both expanded and restricted harvesting in the thirteen national forests in Oregon and Washington and other public lands known to contain spotted owls. Specifically, the Compromise also provided that:

> The Congress hereby determines and directs that management of areas according to subsections (b)(3) and (b)(5) of this section on the thirteen national forests in Oregon and Washington and Bureau of Land Management lands in western Oregon known to contain northern spotted owls is adequate consideration for the purpose of meeting the statutory requirements that are the basis for the consolidated cases captioned *Seattle Audubon Society, et al., v. F. Dale Robertson,* Civil No. 89–160 [1990 WL 152627] and *Washington Contract Loggers Assoc., et al., v. F. Dale Robertson,* Civil No. 89–99 [1991 WL 180099] (order granting preliminary injunction) and the case *Portland Audubon Society, et al., v. Manuel Lujan, Jr.,* Civil No. 87–1160–FR.

*Id.,* at ——, 112 S.Ct. at 1411 (quoting subsection (b)(6)(A) of the Northwest Timber Compromise). In effect, subsection (b)(6)(A) of the Compromise directed that if the government complied with the plan incorporated in the Compromise, then the government would be deemed to have complied with the requirements of several environmental statutes which were the bases for the two lawsuits mentioned in the preceding quote.

The Ninth Circuit struck down the statute as a violation of separation of powers because it "does not, by its plain language, repeal or amend the environmental laws underlying this litigation," but rather "directs the court to reach a specific result and make certain factual findings under existing law." *Seattle Audubon Society v. Robertson,* 914 F.2d 1311 (9th Cir.1990). The Supreme Court reversed, concluding that the Compromise did constitute a change in the law underlying the specified litigation. *Audubon,* —— U.S. at ——, 112 S.Ct. at 1414. The Court noted that Congress could have amended the original statute directly but chose not to do so. Instead, Congress decided that compliance

with the special provision of the Compromise would be sufficient to satisfy the existing statute. *Id.*

The Supreme Court also rejected the contention that the Compromise directed courts to decide cases in a specific way. It noted that the Compromise did not order courts to make any particular findings of fact. Nor did it "instruct the courts whether any particular timber sales would violate subsections (b)(3) and (b)(5)." *Id.,* at ——, 112 S.Ct. at 1413. The Court also pointed out that the challenged language—"Congress hereby determines and directs"—is implicit in any act of Congress.

Thus, under the rubric of *United States v. Klein, supra, Arioli, et al. v. Prudential–Bache, et al., supra,* and *Robertson v. Seattle Audubon Society, supra,* this court is satisfied that § 27A(a) does not offend the separation of powers doctrine. This court then holds that Article III's dual role, to protect the independence of the judiciary and to safeguard litigants "right[s] to have claims decided before judges who are free from potential domination by other branches of government," *U.S. v. Will,* 449 U.S. 200, 218, 101 S.Ct. 471, 482, 66 L.Ed.2d 392 (U.S.1980), is not undermined by the passage of § 27A(a).

### THE FIFTH AMENDMENT

Defendants mount a two-pronged Fifth Amendment attack on § 27A(a). First, the defendants argue that § 27A(a) deprives them of equal protection under the law (implicit in the Fifth Amendment's guarantee of due process) because § 27A(a) is not rationally related to the achievement of legitimate government purposes. According to defendants, § 27A(a) treats citizens of different circuits differently and it distinguishes between persons who filed suit before June 19, 1991, and those who filed suit after that date. Secondly, the defendants argue that the retroactive application of § 27A(a) violates their right to due process because its purpose is not furthered by rational means. The equal protection and due process arguments will be addressed separately.

## EQUAL PROTECTION

■ In the case before the court, no suspect classification is present, nor is there any infringement of a fundamental constitutional right. Therefore, the standard of judicial scrutiny under which this court examines § 27A(a) is the "rational basis" test. *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 942–42, 59 L.Ed.2d 171 (U.S.1979). To survive a Fifth Amendment challenge under this test, the amendment must be merely rationally related to furthering a legitimate governmental interest. *Id.*

■ Here, the state interest is clear and legitimate. "Congress sought to reinstate those causes of action that were timely when filed, but which were subsequently rendered untimely" by *Lampf* and *Beam. Henderson,* 971 F.2d at 1574.[10] ". . . Section 27A(a) merely provides that the applicable statute of limitations, which is an affirmative defense, will vary with the jurisdiction in which suit is brought." *Id.* There is nothing irrational about varying the applicable statute of limitations for a cause of action from one jurisdiction to another. This situation commonly occurs whenever Congress fails to provide an express statute of limitations for a federal cause of action and, instead, requires courts to "absorb" analogous local time limitations. Such a distinction was not only rational but necessary here because the purpose of § 27A(a) was to reinstate the law in the various circuits as it existed prior to *Lampf* in order to protect parties who had relied on the previous scheme. *Arioli,* at p. 1272.

Nor was it irrational for Congress to limit its remedy to those plaintiffs who have already filed suit in reliance upon the existing statute of limitations. *Id.* "[Such plaintiffs] will suffer the most concrete injury because they have expended significant time and effort to bring their action, not to mention substantial funds for attorney fees and court costs." *Id.*

10. *See* Pub.L. No. 102–242, § 476, 105 Stat. 2236, 2387 (1991). *See also* 137 Cong.Rec. § 18, 624 (daily ed. Nov. 27, 1991) (statement of Sen. Bryan) (noting that *"Lampf* changed the rules in the middle of the game for thousands of fraud victims who already had suits pending"); 137 Cong.Rec. § 17, 315 (daily ed. Nov. 21, 1991) (statement of Sen. Riegle) (stating that Congress

## DUE PROCESS

The fact that '§ 27A(a) has an effect on pending litigation does not, in itself, constitute a due process violation. *See International Union of Electrical, Radio and Machine Workers v. Robbins & Myers,* 429 U.S. 229, 243–44, 97 S.Ct. 441, 450, 50 L.Ed.2d 427 (1976). Section 27A(a) is a rational means of preserving those lawsuits which were pending prior to *Lampf.* The Court in *Arioli v. Prudential–Bache Securities, Inc.,* 800 F.Supp. 1478 (E.D.Mich.1992), agrees:

> Furthermore, Section 27A is a rational means used by Congress to achieve its objective of preserving multi-billion dollar securities fraud claims for court. In order to circumvent the *Lampf* holding issued June 20, 1991, and preserve the multi-billion dollar fraud cases filed pre-*Lampf,* Congress chose June 19, 1991, the day before *Lampf,* as the date on which Section 27A would have effect. Choosing June 19, 1991, as the cut-off date ensured that any Section 10(b) claims pending on that date were subject to the pre-*Lampf* law, while maintaining the *Lampf* rule for all future Section 10(b) claims.

*Arioli,* 800 F.Supp. at 1484. Nor are there any other plausible due process violations triggered by § 27A(a). *See Henderson,* 971 F.2d at 1573–74.

## ISSUE # 1

### SUMMARY ON CONSTITUTIONALITY ISSUE

Many courts which routinely deal with federal securities claims have ruled on the overall constitutional validity of § 27A(a). While the federal district courts are split over the issue of constitutionality; however, it now appears that a majority of the district courts have found § 27A(a) to be constitutional.

The following district courts have found § 27A(a) constitutional. *Schell, et al. v. Abe-*

"must take steps to protect those investors who had cases pending prior to [*Lampf*]"); 137 Cong. Rec. § 11,812 (daily ed. Nov. 26, 1991) (statement of Rep. Markey) (noting that if *Lampf* were retroactively applied, it would result in the dismissal of "over four billion dollars of fraud claims, including those against Milken, Keating, and Fred Carr . . .").

don–Butwin Oil Company, No. 89 Civ. 6435 (PNL), 1993 WL 77371, at *2, 1993 U.S.Dist. LEXIS 3174, at *5 (S.D.N.Y. March 12, 1993); *Lawrence, et al. v. Cohn*, 816 F.Supp. 191, 196 (S.D.N.Y.1993); *Dendinger, et al. v. First National Corp., et al.*, No. 87–4611, No. 89–0824, No. 88–0165, 1992 WL 318593, at *8, 1992 U.S.Dist. LEXIS 16562, at *23 (E.D.La. Oct. 28, 1992); *Ash v. Dean Witter Reynolds, Inc.*, 806 F.Supp. 1473, 1478 (E.D.Cal.1992); *Adler v. Berg Harmon Associates*, 790 F.Supp. 1235, 1242–45 (S.D.N.Y.1992); *Bankard v. First Carolina Communications, Inc.*, No. 89 8571, 1992 WL 3694, at *6, 1992 U.S.Dist. LEXIS 53, at *17–18 (N.D.Ill. Jan. 3, 1992); *Ayers, et al. v. Sutliffe et al.*, No. C–1–90–650, 1992 WL 207235, at *3, 1992 U.S.Dist. LEXIS 3219, at *4–6 (S.D.Ohio Feb. 11, 1992); *TBG, Inc. v. Bendis*, No. 89–2423–0, 1992 WL 80622, at *5, 1992 U.S.Dist. LEXIS 5940, at *19 (D.Kan. March 5, 1992); *Axel Johnson, Inc. v. Arthur Andersen & Company*, 790 F.Supp. 476, 478–480 (S.D.N.Y.1992); *Wegbreit v. Masley Orchards Corporation*, 793 F.Supp. 965, 969–70 (E.D.Wash.1992); *Rabin v. Fivzar Associates, et al.*, 801 F.Supp. 1045, 1051–56 (S.D.N.Y.1992); *Brown v. Hutton Group*, 795 F.Supp. 1307, 1313–17 (S.D.N.Y.1992); *Kalmanson v. McLaughlin et al.*, No. 86 Civ. 9366, 1992 WL 190139, at *3, 1992 U.S.Dist. LEXIS 11172, at *6–9 (S.D.N.Y. July 27, 1992); *In re Crazy Eddie Securities Litigation*, 802 F.Supp. 804, 810–11 (E.D.N.Y. 1992); *In re Melridge, Inc.*, No. 87–1426–JU, 1992 WL 58265, at *2, 1992 U.S.Dist. LEXIS 3477, at *5 (D.Or. March 20, 1992); *Venturetech II v. Deloitte Haskins & Sells*, 790 F.Supp. 574, 576 (E.D.N.C.1992); *Arioli, et al. v. Prudential–Bache Securities, et al.*, 800 F.Supp. 1478, 1481–84 (E.D.Mich.1992); *In re Taxable Municipal Bond Securities Litigation*, 796 F.Supp. 954–957–962 (E.D.La. 1992).

The following federal district courts have found 27A(a) to be unconstitutional. *In re Brichard Securities Litigation*, 788 F.Supp. 1098, 1103–06 (N.D.Cal.1992); *TGX Corp. v. Simmons*, 786 F.Supp. 587, 589–92 (E.D.La. 1992); *Bank of Denver v. Southeastern Capitol Group, Inc.*, 789 F.Supp. 1092, 1098 (D.Colo.1992); *Johnston v. Cigna Corp.*, 789 F.Supp. 1098, 1099–1100 (D.Colo.1992); *In re*

*Prudential–Bache Energy Income Partnerships Securities Litigation*, No. 888, 1992 WL 142575, at *2, 1992 U.S.Dist. LEXIS 9123, at *6 (E.D.La. June 9, 1992); *In re Rospatch Securities Litigation*, 802 F.Supp. 110, 114–15 (W.D.Mich.1992); *Plaut v. Spendthrift Farm, Inc. et al.*, 789 F.Supp. 231, 234–35 (E.D.Ky.1992).

While there are fewer Circuit Court of Appeals decisions addressing the constitutionality of § 27A(a), all Circuit Courts addressing § 27A(a) have found the statute constitutional. *Henderson, Chambers and Moore v. Scientific–Atlanta, Inc.*, 971 F.2d 1567, 1571–75 (11th Cir.1992); *Ivan A. Anixter, et al. v. Home Stake Production Company, et al.*, 977 F.2d 1533, 1547 (10th Cir. 1992); *Gray v. First Winthrop Corp.*, 989 F.2d 1564, 1573, 1993 U.S.App. LEXIS 6995, at *28 (9th Cir.1993); *Berning v. A.G. Edwards & Son, Inc.*, 990 F.2d 272, 279, 1993 U.S.App. LEXIS 6074, at *16 (7th Cir.1993).

The Second and Fourth Circuits, while not directly ruling on the constitutionality of § 27A(a), have implicitly validated it. *See Litton Industries, Inc. v. Lehman Brothers Kuhn Loeb, Inc.*, 967 F.2d 742, 751 n. 6 (2nd Cir.1992) ("We are unimpressed by the cogency of analyses finding Section 27A unconstitutional."); *Hirschler, et al. v. GMD Investments, et al.*, No. 91–2087, 1992 WL 188143, at *2, U.S.App. LEXIS 18492, at *7 (4th Cir., Aug. 7, 1992).

Having considered the constitutional attacks raised against § 27A(a), this court is obliged to join the chorus of cases proclaiming that the statutory enactment passes constitutional muster.

### *ISSUE # 2*

### AS TO § 10(b) AND RULE 10b–5 CLAIMS, WHAT LIMITATION PERIOD WAS PROVIDED BY THE APPLICABLE LAWS IN THE FIFTH CIRCUIT ON OR BEFORE JUNE 19, 1991?

Having found that § 27A(a) is free of constitutional infirmities, pursuant to the dictates of § 27A(a), this court must apply a limitation period to this cause of action under the law, including principles of retroactivity,

prevailing in the Fifth Circuit on or before June 19, 1991. Prior to *Lampf,* most federal courts "absorbed" the limitation period of the most analogous state cause of action. In other words, they applied the limitation period from the state cause of action bearing the closest substantive resemblance to the cause of action arising under § 10(b) and Rule 10b-5. *See e.g., Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir.1988); *White v. Sanders,* 650 F.2d 627, 629 (5th Cir.1981); *McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d 888, 891 (5th Cir.1979) (noting the evident approval of this practice by the Supreme court in *Ernst and Ernst v. Hochfelder,* 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976)).[11]

As of June 19, 1991, no Fifth Circuit decision had determined which Mississippi cause of action bore the closest substantive resemblance to § 10(b) and Rule 10b-5 actions. However, separate panels of the Fifth Circuit have compared the laws of Louisiana, Georgia, Alabama, and Texas with § 10(b) and Rule 10b-5. These panels have reached differing, but not necessarily inconsistent, results.[12]

In order to discern which Mississippi cause of action is most akin to § 10(b) and Rule 10b-5 actions, this court follows the analytical framework laid down by the Fifth Circuit in *White v. Sanders,* 650 F.2d 627 (5th Cir. 1981). The *White* Court compared Alabama's one-year "catch-all" limitations period, which Alabama applied to common law fraud actions, with the two-year period applicable to actions under Alabama's blue sky law and held that the blue sky law bore the closer substantive resemblance to § 10(b)

and Rule 10b-5. *Id.* at 629 and 632. The *White* Court so held despite the presence of "three features which distinguished the Alabama blue sky statute from the federal securities laws." *Id.* First, the *White* Court dismissed the distinction that § 10(b) and Rule 10b-5 provided redress for defrauded purchasers and sellers, whereas the blue sky law allowed recovery by purchasers only, as a difference which "has never been of controlling significance." *Id.* Second, the *White* Court deemed "not persuasive" the fact that the blue sky law's limitation period ran from the date of sale, whereas federal law and common law fraud actions in Alabama run from the date of discovery. *Id.* at 630. The last distinction tackled by the *White* Court was the most significant one. While Rule 10b-5[13] and common law fraud actions required the element of scienter, the blue sky laws did not. *Id.* Nonetheless, the *White* Court ruled that federal securities law and Alabama's blue sky law "could hardly be more analogous." *Id.* at 632. " 'By comparison, the shared purposes between § 10(b) and common law fraud are generalized at best.' " *Id.* at 633, quoting *O'Hara v. Kovens,* 625 F.2d 15, 18 (4th Cir.1980).

The *White* Court applied a "commonality of purposes" test which it adopted from the Fourth Circuit case of *O'Hara v. Kovens, supra.* This test de-emphasizes technical and formalistic factors in favor of substantive considerations. The *O'Hara* Court set out the test as follows:

> When borrowing a state statute of limitations for federal purposes, a court should look to the statute which most clearly addresses the same or similar policy consid-

---

11. *See, supra,* discussion on pages 1269–70.

12. *Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir.1988) (applied Louisiana's blue sky law prescriptive period to § 10b and Rule 10b-5 claims and recognized that the Fifth Circuit had previously done so).

 *White v. Sanders,* 650 F.2d 627, 629–633 (5th Cir.1981) (compared Alabama's common-law fraud action, together with its "catch-all" limitations period against Alabama's blue sky law and held that the blue sky law most closely resembled federal securities claim and better effectuated federal policy involved).

 *Wood v. Combustion Engineering, Inc.,* 643 F.2d 339, 341–346 (5th Cir.1981) (compared Tex-

as' general fraud statute with Texas' blue sky law and found that the general fraud statute most closely resembled § 10(b) and Rule 10b-5 claims).

 *McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d 888, 891–895 (5th Cir.1979) (compared Georgia's general fraud statute and Georgia's state securities laws to § 10(b) and Rule 10b-5 claims and determined that the general fraud statute most closely resembled federal securities claim).

13. Rule 10b-5 actions require scienter pursuant to *Ernst and Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 1385, 47 L.Ed.2d 668 (1976).

erations as are addressed by the federal right being asserted. It is not necessary that the state statute operate in the same fashion as the federal scheme, nor is it necessary that the state statute describe a cause of action identical to the federal cause at issue. *Morris v. Stifel, Nicolaus & Co., Inc., supra,* 600 F.2d at 142–146; *Dupuy v. Dupuy, supra,* 551 F.2d at 1023–24 n. 31. There simply must be a commonality of purpose between the federal right and the state statutory scheme so that it is reasonable to subject the federal implied right to the statute of limitations provided by state law. By comparison, the shared purposes between § 10(b) and common law fraud are generalized at best.

*O'Hara,* 625 F.2d at 18.

At this point in this court's analysis and in light of *White* and the commonality of purpose test, a comparison of the relevant Mississippi actions with § 10(b) and Rule 10b–5 is in order. There are two causes of action in Mississippi which could potentially supply the prescriptive period for § 10(b) and Rule 10b–5: Mississippi's Uniform Securities Act and Mississippi's common law fraud action. Defendants campaign for the former, while plaintiff argues for the latter.

Mississippi's Uniform Securities Act is located in Title 75, Chapter 71, of the Mississippi Code Annotated. It is based on the model Uniform Securities Law (USL) from whence most state blue sky laws are derived. Two sections of the Uniform Securities Act are potentially applicable here: Miss.Code Ann. § 75–71–501 and § 75–71–717.

### § 75–71–501. Fraud or deceit in connection with offers, sales or purchases.

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly,

(1) To employ any device, scheme or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

There is no express limitation period included in § 501. However, in October, 1991, in *Geisenberger v. John Hancock Distributors, Inc.,* 774 F.Supp. 1045, 1050 (S.D.Miss.1991). The Honorable William H. Barbour held that the two-year limitations period of Miss.Code Ann. § 75–71–725 applied to § 501.

The second section of Mississippi's Uniform Securities Act which is a candidate for a prescription period is § 75–71–717. This statute is set out below:

### § 75–71–717. Liability to buyers for illegal or fraudulent sales or offers.

(a) Any person who (1) offers or sells a security in violation of Section 75–71–117(a), 75–71–301 or 75–71–401, or of any rule or order under Section 75–71–113 which requires the affirmative approval of sales literature before it is used, or of any condition imposed under Section 75–71–405(d) or 75–71–417, or (2) offers or sells a security by the use of any written or oral communication which contains any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent (8%) per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at eight percent (8%) per year from the date of disposition.

Section 717's limitation period of two years is set out in Miss.Code Ann. § 75–71–725, which recites as follows:

§ 75–71–725. **Limitations of actions.**

No action shall be maintained to enforce any liability created under section 75–71–717(2) unless brought within two (2) years after the discovery of the untrue statement or omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 75–71–717(1) unless brought within two (2) years after the violation upon which it is based.

The other potentially applicable Mississippi cause of action, and the one championed by plaintiff, is common law fraud. Unlike some other Fifth Circuit states, Mississippi has no general fraud statute which is specifically applicable to securities fraud. *Compare Wood,* 643 F.2d at 342 (Texas general fraud statute); *McNeal,* 598 F.2d at 893 n. 10 (Georgia general fraud statute). The elements of common law fraud in Mississippi are:

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; (9) his consequent and proximate injury.

*Whittington v. Whittington,* 535 So.2d 573, 585 (Miss.1988).

The statute of limitations period applicable for common law fraud arising prior to 1989 in Mississippi is six years pursuant to Mississippi's "catch-all" statute of limitations, Miss. Code Ann. § 15–1–49, as below reproduced:

§ 15–1–49. **Limitations applicable to actions not otherwise specifically provided for.**

All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of such action accrued, and not after.

Thus, the task of this court is to ascertain whether the Uniform Securities Act with its two-year limitation period or common law fraud with its six-year limitation period is most substantively analogous to § 10(b) and Rule 10b–5.

This cause of action was filed in June, 1990. Therefore, assuming this action accrued in September, 1984, when Mr. Fortenberry sold his shares back to the defendants, if this court applies the six-year prescriptive period of common law fraud, plaintiff's action is timely. But, if this court applies the two-year prescriptive period of the Mississippi Uniform Securities Act, plaintiff's action is time-barred.

Section 501's language is all but identical to the language of Rule 10b–5. Compare the language of § 501,

§ 75–71–501. **Fraud or deceit in connection with offers, sales or purchases.**

It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly,

(1) To employ any device, scheme or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person,

with the language of Rule 10b–5:

*It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,*

(a) *To employ any device, scheme or artifice to defraud;*

(b) *To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or*

(c) *To engage in any act, practice, or course of business which operates or*

*would operate as a fraud or deceit upon any person,*

in *connection with the purchase or sale of any security.* (emphasis, for purposes of comparison, mine).

The nearly identical language of § 501 and Rule 10b–5 leads this court to the inexorable conclusion that they have nearly identical purposes. Thus, § 501 is a virtual analogy to Rule 10b–5. "... Miss.Code Ann. § 75–71–501 is substantively identical to Rule 10b–5." *Geisenberger,* 774 F.Supp. at 1050. "Mississippi Securities law is substantively identical to Rule 10b–5." *Shivangi v. Dean Witter Reynolds,* 107 F.R.D. 313, 322 (1985).

■ On the other hand, the language of § 717 is only partially lifted from Rule 10b–5. Compare the underlined portions of ·§ 717 with Rule 10b–5 set out above:

**§ 75–71–717. Liability to buyers for illegal or fraudulent sales or offers.**

(a) Any person who (1) offers or sells a security in violation of Section 75–71–117(a), 75–71–301 or 75–71–401, or of any rule ·or order under Section 75–71–113 which requires the affirmative approval of sales literature before it is used, or of any condition imposed under Section 75–71– · 405(d) or 75–71–417, or (2) offers or sells a security by the use of any written or oral communication which contains any *untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading* (the buyer not knowing of the untruth or omission), and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security from him, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight percent (8%) per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security upon the tender of the security, or for damages if he no longer owns the security. Damages are the amount that would be recoverable upon a tender less the value of the security when the buyer disposed of it and interest at eight percent (8%) per year from the date of disposition.·

However, under *White,* replication of language is less important· than whether the federal and state laws address the same policy considerations. *White,* 650 F.2d at 632–33; *O'Hara,* 625 F.2d at 618. Here, § 501 and § 717 and § 10(b) and Rule 10b–5 all promote the same policy, full disclosure in stock transactions. *See Dupuy v. ˙Dupuy,* 551 F.2d 1005, 1023 n. 31 (5th Cir.1977).

■ There are three differences between the Mississippi Uniform Securities Act and § 10(b) and Rule 10b–5 which militate for the application of common law fraud's six-year prescriptive period. First, the· plaintiff here represents a seller of securities, and only purchasers of securities can bring an action under § 717, while both purchasers and sellers can bring an action under ·§ 10(b), Rule 10b–5, and common law fraud. However, this court does not find this to be a significant distinction. The Fifth Circuit has dismissed this difference as one which "has never been of controlling significance." *White,* 650 F.2d at 629. In *O'Hara,* as here, the plaintiff was a seller and the Maryland blue sky law did not provide a civil remedy for defrauded sellers at the time the action accrued. Nonetheless, the *O'Hara* Court did not find this distinction dispositive and applied the blue sky law limitation period to a Rule 10b–5 claim brought by a defrauded seller. *O'Hara,* 625 F.2d at 17–18. *See also In re Data· Systems Securities Litigation,* 843 F.2d 1537, 1544 (3rd Cir.), *cert. denied,* 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988); *Gurley v. Documentation, Inc.,* 674 F.2d 253,·259 (4th Cir.1982); *Friedlander v. Troutman, Sanders, Lockerman & Ashmore,* 788 F.2d 1500, 1505 (11th Cir.1986). Moreover, barring· the applicability of § 717, this court could derive its two-year limitation period from ·§ 501, under· which both sellers and purchasers may bring an action.

The second distinction is more substantial and involves the element of scienter. Neither § 501 nor § 717 requires the element of scienter. Common law fraud requires the element of scienter, as do Rule 10b–5 actions

in the wake of the Supreme Court's opinion in *Ernst and Ernst v. Hochfelder*. Faced with the same circumstances, the Fifth Circuit has nonetheless rejected the scienter factor as dispositive and applied now analogous blue sky law limitation periods instead. *White*, 650 F.2d at 630; *Dupuy*, 551 F.2d at 1024 n. 31.

The last distinction involves damages. Section 717 requires a specific calculation of damages, while common law fraud and Rule 10b–5 permit a broad range of recoverable damages. This court does not find this distinction to be dispositive inasmuch as it does not affect the commonality of purpose shared by § 501 and § 717 and the federal securities laws.

■ There is another potential objection to the application of the Mississippi Uniform Securities Act's two-year statute of limitations here. Section 501 is nearly substantively identical to Rule 10b–5. *See Geisenberger*, 774 F.Supp. at 1050. Also, both purchasers and sellers can bring an action under § 501, while only purchasers can bring an action under § 717. Thus, § 501 is clearly a more appropriate vehicle to provide the limitation period than § 717. The problem which arises is that § 725's two-year limitation period was not judicially grafted onto § 501 until October, 1991. However, § 27A(a) mandates that:

> [t]he limitation period for any private civil action implied under section 10(b) of this act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, *including principles of retroactivity, as such laws existed on June 19, 1991.* (emphasis mine).

However, this court finds Judge Barbour's application of § 725's two-year limitation period to § 501 retroactively applicable to the instant cause of action, inasmuch as the *Geisenberger* opinion was handed down during the pendency of these proceedings.

As a matter of course, new decisions are given retroactive application to pending cases. *James B. Beam Distilling Co. v. Georgia, et al.,* — U.S. —, —, 111 S.Ct. 2439, 2442–43, 115 L.Ed.2d 481 (1991). *Ac-*

*cord Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 486 n. 16, 101 S.Ct. 2870, 2879 n. 16, 69 L.Ed.2d 784 (1981); *See also Jones v. Thigpen,* 741 F.2d 805, 810, *rehearing denied en banc,* 747 F.2d 1465, *cert. granted and vacated,* 475 U.S. 1003, 106 S.Ct. 1172, 89 L.Ed.2d 292, *on remand,* 788 F.2d 1101, *rehearing denied en banc,* 795 F.2d 521, *cert. denied,* 479 U.S. 1087, 107 S.Ct. 1292, 94 L.Ed.2d 148 (1987).

However, under certain circumstances, retroactivity would be undeniably harsh or inequitable. Therefore, in *Chevron Oil v. Huson,* 404 U.S. 97, 106, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971), the Supreme Court established a tripartite test to determine whether an exception to retroactivity is warranted.

In *Lavender v. V & B Transmissions & Auto Repair,* 897 F.2d 805, 806–07 (5th Cir. 1990), the Fifth Circuit found that the Supreme Court decision, *Patterson v. McLean Credit Union,* (which held that employment discrimination claims are not actionable under § 1981, a federal civil rights statute), would be applied retroactively to a race discrimination action decided in district court prior to the *Patterson* decision. The *Lavender* Court applied the three-factor *Chevron* test and determined that retroactivity was warranted. *Id.*

Under the *Chevron* test, the first principle asks whether the decision establishes a new principle of law, either by overruling past precedent on which plaintiffs may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. *Chevron,* 404 U.S. 97, 92 S.Ct. at 355, 30 L.Ed.2d 296. The *Lavender* Court found that this principle weighed in favor of non-retroactivity. *Lavender,* at 806.

The second principle requires the court to examine the prior history of the rule, its purpose and effect, and whether retroactive application will further or retard its operation. *Chevron,* 404 U.S. at 106, 92 S.Ct. at 355. The *Lavender* Court found this principle militated in favor of retroactivity. *Lavender,* at 807.

The third principle asks the Court to weigh the inequity imposed by retroactive

application. *Chevron,* 404 U.S. at 106, 92 S.Ct. at 355. The *Lavender* Court found that this principle was neutral. *Lavender,* at 807.

Ultimately, despite the arguable inequity to the plaintiffs, the *Lavender* Court retroactively applied *Patterson* to the plaintiffs' pending case and eliminated their cause of action. *Id.* The *Lavender* Court pointed out that "[the Fifth Circuit] has emphasized that 'the purpose of the rule should be given greater weight than the extent to which the parties relied on the law that existed before the rule was announced.'" *Id.* at 807, quoting *Williams v. Phil Rich Fan Mfg. Co.,* 552 F.2d 596, 600 (5th Cir.1977). "Therefore, even though plaintiffs may have relied on prior precedent, this reliance is outweighed by the fact that retroactivity effectively advances the purposes of the new rule...." *Lavender,* 897 F.2d at 807. *See also Hanner v. State of Miss.,* 833 F.2d 55, 59 (5th Cir. 1987) (plaintiffs who filed § 1983 action more than one year after *Wilson v. Garcia,* which made statute of limitations for all § 1983 claims the forum state's statute of limitations for personal inquiry torts, was time-barred, despite the fact that action was filed within statutory period applicable prior to *Wilson* ).

Applying *Chevron* to the instant cause, under the guidance of *Lavender,* this court reaches the same decision as the *Lavender* Court. The third factor is a wash. The first factor may weigh against retroactivity. The second factor argues so strongly for retroactive application that the entire scale is tipped in favor of retroactivity. First, it should be noted that no state or federal court in Mississippi has ever explicitly held that § 501 was governed by the six-year prescriptive period of Miss.Code Ann. § 15–1–49. Therefore, the first factor here may not militate as heavily in favor of non-retroactivity as it did in *Lavender.*

More importantly, the second factor, effectuation of the rule's underlying purpose, weighs strongly in favor of retroactive application. Section 501 and § 717 are very similar components of the Mississippi Uniform Securities Act. To assign different limitation periods to § 501 and § 717 would disrupt a unified statutory scheme. Non-retroactive application of *Geisenberger* would disrupt the sound statutory policy of uniformity, allowing defrauded purchasers a six-year prescriptive period while restricting buyers to a two-year period.

That the *Geisenberger* opinion should be given retroactive effect is further adduced by Judge Barbour's opinion in *Stewart v. Germany,* 631 F.Supp. 236 (S.D.Miss.1986). In *Stewart,* the plaintiff was the buyer of a general partnership interest who brought an action against the other general partners and the general partnership itself. The plaintiff alleged violations of federal securities law, including Rule 10b–5, and state securities law. In the course of the opinion, the defendants argued that the plaintiff's Rule 10b–5 claim was time-barred. In *Stewart,* 631 F.Supp. at 247, Judge Barbour expanded § 725 beyond its express application to § 717.

> [S]ince Rule 10b–5 does not specify a statute of limitation, the state statute of limitation applies. In this case, Miss.Code Ann. § 75–71–725 (Supp.1985) provides for a two-year statute of limitation for the illegal or fraudulent sale or offer of a security.

Even if one were to assume, for the sake of argument, that Judge Barbour's application of § 725's two-year limitation period to § 501 is dicta, rather than a direct holding, *Stewart* nonetheless eliminates any possible objection to retroactive application of *Geisenberger* because *Stewart* eliminates the first prong of the *Chevron* test. Given *Stewart,* the plaintiff here cannot claim that the application of § 725 to § 501 was an issue of first impression, the resolution of which was not clearly foreshadowed.

There has been some confusion here regarding the continued viability of the *Chevron* test in light of the Supreme Court's most recent discourse on retroactivity in *James B. Beam Distilling Co. v. Georgia, et al.,* 501 U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). *Beam,* a narrow plurality opinion, did not explicitly overrule *Chevron.* However, *Beam* contains language which throws the precedential value of *Chevron* in doubt. "[P]rinciples of equality and *stare decisis* here prevail[ ] over any claim based on a *Chevron Oil* analysis." *Beam,* at ——, 111 S.Ct. at 2446.

However, this court need not decide to what extent *Beam* has undermined *Chevron* or even whether *Beam* or *Chevron* controls in the instant case because both *Beam* and *Chevron* mandate the retroactive application of *Geisenberger* here. The issue in *Beam* was the appropriateness of selective prospectivity (an application of a new rule in the case in which it is pronounced, then a return to the old one with respect to all others arising on facts predating the pronouncement) in the civil context. *Beam*, at ——, 111 S.Ct. at 2445.

*Beam* starts from the assumption that, under normal circumstances, judicial decisions may be retroactively applied to pending actions.

> [A] decision may be made fully retroactive, applying both to the parties before the court and to all others by and against whom claims may be pressed, consistent with res judicata and procedural barriers such as statutes of limitations. This practice is overwhelmingly the norm [citations omitted] and is in keeping with the traditional function of the courts to decide cases before them based upon their best current understanding of the law. [citations omitted]

*Id.*, at ——, 111 S.Ct. at 2443.

The plurality opinion deemed selective prospectivity inappropriate in the civil context. *Id.*, at —— – ——, 111 S.Ct. at 2446–48. This opinion was held by Justices Souter, Stevens. Justices White, Blackmun, Marshall, and Scalia concurred. The *Beam* plurality based its holding on the "equality principle, that similarly situated litigants should be treated the same, ...." *Id.* at ——, 111 S.Ct. at 2446.

Most significantly for the case *sub judice*, *Beam* does narrow *Chevron* in the sense that attempts to limit the retroactive application of decisions to pending cases for reasons of equity are henceforth strongly discouraged.

> Nor, finally, are litigants to be distinguished ... on the particular equities of their claims to prospectivity: whether they actually relied on the old rule and how they would suffer from retroactive application of the new. It is simply in the nature of precedent, as a necessary component of

any system that aspires to fairness and equality, .... To this extent, our decision here does limit the possible applications of *Chevron Oil* analysis, however irrelevant *Chevron Oil* may otherwise be to this case. Because the rejection of modified prospectivity precludes retroactive application of a new rule to some litigants when it is not applied to others, the *Chevron Oil* test cannot determine the choice of law by relying on the equities of the particular case. [citations omitted]

*Id.* at ——, 111 S.Ct. at 2447. The Court went on to limit its diminishment of equity in the determination of the retroactive application of new decisions to pending cases.

> Of course, the generalized inquiry permits litigants to assert, and the courts to consider, the equitable and reliance interests of parties absent but similarly situated.

*Id.* at ——, 111 S.Ct. at 2448.

Thus, it seems that if retroactivity is not found inequitable under the *Chevron Oil* test, retroactivity also must be found under *Beam*, which limits *Chevron Oil*'s equitable restriction of retroactivity. "[W]hen the Court has applied a rule of law to the litigants in one case, it must do so with respect to all others not barred by procedural requirements or res judicata." *Id.* at ——, 111 S.Ct. at 2448. There are no such obstacles here. Thus, under either *Beam* or *Chevron*, *Geisenberger's* two-year limitation period is retroactively applied to the instant action, and, absent tolling, plaintiff's claim is time-barred.

Most of the above discussion focused upon § 501 with its retroactive, judicially-crafted two-year period of limitations as an analogous cause of action to § 10b and Rule 10b–5. However, this same two-year limitations period can be independently derived here from § 717. "... Miss.Code Ann. § 75–71–717(a)(2) creates an independent cause of action and need not be construed, ..., in conjunction with ... § 501." *Geisenberger*, 774 F.Supp. at 1050. That only sellers can bring an action under § 717 is not dispositive here; for *White*, 650 F.2d at 629, and *O'Hara*, 625 F.2d at 1778, have both derived limitations period for federal securities claims from

state actions which could only be brought by defrauded purchasers when the plaintiff at issue was a defrauded seller.[14]

Before proceeding further, the court first disposes of the plaintiff's reliance on the Fifth Circuit cases of *In re Sioux, Ltd., Securities Litigation v. Coopers and Lybrand*, 914 F.2d 61, 64 (5th Cir.1990); *Wood v. Combustion Engineering*, 643 F.2d 339, 346 (5th Cir.1981), and *McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888, 893–94 (5th Cir.1979), for an application here of Mississippi's common law fraud action. All of the above decisions held that the forum state's general fraud statute most substantively resembled § 10(b) and Rule 10b–5 claims. But, all of the above decisions are readily distinguishable from the instant case.[15]

In *McNeal*, although the Fifth Circuit applied the limitations period from a general fraud statute, the facts were inapposite to those presently before this court. The *McNeal* plaintiff sought damages against a broker for "churning." As the Fifth Circuit pointed out in *White*, 650 F.2d at 631, "[t]he now obsolete Georgia securities law before the panel was simply not conducive to such a cause of action." The *McNeal* Court based its holding on the fact that the plaintiff sought damages against a broker for churning, rather than a "rescission from an actual purchaser or seller of securities," *McNeal*, 598 F.2d at 893–94, as is the case here. The remedies of the now obsolete Georgia securities law addressed by *McNeal* were expressly limited to actions for rescission. *Id.* Since the plaintiff could not frame his action as one for rescission, the *McNeal* Court held that:

> [a]ny similarity between the damages remedy available to [the plaintiff] under section 10(b) and the rescission remedy available under the Georgia Security Act of 1957 is therefore, at best, uncertain. By contrast, there is no reason to doubt that Georgia's general fraud statute would support an action for money damages based on the churning of [the plaintiff's] account.

*Id.* Thus, *McNeal* is inapposite. Here, the plaintiff's cause of action fits squarely within § 501 and § 717 of the Mississippi Uniform Securities Act, which is more similar to the blue sky laws of Alabama in *White* and Louisiana in *Jensen* and *Dupuy*.

*Wood* and *In re Sioux* both involved Texas laws which presented dissimilar choices to those presented by the equivalent Mississippi laws. The *Wood* Court chose the Texas fraud statute, Section 27.01, which, unlike the generic common law fraud action available in Mississippi, specifically addresses "[f]raud in a transaction involving real estate or stock in a corporation or joint stock company ...." *Wood*, 643 F.2d at 342. Thus, unlike Mississippi's common law general fraud action, Texas' fraud statute and § 10(b) and Rule 10b–5 actions have implicitly similar underlying purposes. *See* Note, *Statutes of Limitation in 10b–5 Actions: White v. Sanders*, 34 Ala.L.Rev. 131 (1983). Further, the Texas blue sky law at issue in *Wood* is less analogous to § 10(b) and Rule 10b–5 claims than its Mississippi equivalent. The relevant Texas blue sky provision, Art. 581, contained no precise 10b–5 analogue. *Wood*, 643 F.2d at 342–43. This is in direct contrast to Miss. Code Ann. § 75–71–501 which is, in essence, a duplicate of Rule 10b–5.

*In re Sioux*, another Fifth Circuit decision emanating from Texas, can be similarly discarded. The *Sioux* Court followed the reasoning of *Wood* and, as in *Wood*, applied the limitation period of Texas' fraud statute, Section 27.01. Thus, for the reasons this court distinguished in *Wood*, the holding in *Sioux* is as equally inapposite to the cause of action before this court as the holding in *Wood*.

The majority of Fifth Circuit cases (in other words, those that have dealt with state statutory schemes more similar to those found in Mississippi than in Texas) have found state blue sky laws to be more analogous to § 10(b) and Rule 10b–5 actions than fraud actions. *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir.1988) (applied Louisiana blue sky law); *White v. Sanders*, 650 F.2d at 633 (applied Alabama blue sky law); *Dupuy*

---

14. *See, supra*, p. 1280.

15. The Fifth Circuit opinion, *White v. Sanders*, 650 F.2d 627, 629 and 632 (5th Cir.1981), held that Alabama's blue sky law bore a closer sub-stantive resemblance to § 10(b) and Rule 10b–5 than Alabama's common law fraud action. *See, supra*, note 12 and pp. 25–27. Significantly, the *White* Court found both *McNeal* and *Wood* inapposite and, hence, non-controlling.

*v. Dupuy,* 551 F.2d at 1023 n. 31 (applied Louisiana blue sky law). Additionally, in *Friedlander, et al. v. Troutman, Sanders, et al.,* 788 F.2d 1500, 1507 (11th Cir.1986), the Eleventh Circuit looked to Georgia law, in a case factually more similar to the case before this court than *McNeal,* and held that Georgia's blue sky law, rather than Georgia's general fraud statute, substantively resembled § 10(b) and Rule 10b–5 actions.[16] Thus, *Wood* and *Sioux* cannot be considered controlling precedent in the Fifth Circuit except as to cases which originate in Texas. With its unique state fraud action, Texas' state laws involving securities and fraud are much more analogous to those found in Alabama (*White v. Sanders*), Louisiana (*Jensen v. Snellings* and *Dupuy v. Dupuy* ) and Georgia (*Friedlander*).

Although the practice of other circuits is merely persuasive, rather than binding, on this court, it should be noted that the majority of other circuits derive limitation periods for § 10(b) and Rule 10b–5 actions from state blue sky laws,[17] rather than common law fraud actions or general fraud statutes. *Gurley v. Documentation, Inc.,* 674 F.2d 253, 258–59 (4th Cir.1982); *O'Hara v. Kovens,* 625 F.2d 15, 17 (4th Cir.1980), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981); *Carothers v. Rice,* 633 F.2d 7, 12–15 (6th Cir.1980); *Teamsters Local 282 Trust Fund v. Angelos,* 815 F.2d 452, 456 (7th Cir.1987) (other courts have also recognized that the general commonality of purpose shared by the federal and state securities laws makes the state's limitation period particularly appropriate for use in federal securities law claims); *Morris v. Stifel, Nicolaus*

& *Co.,* 600 F.2d 139, 144 (8th Cir.1979); *Friedlander v. Troutman, Sanders, Lockerman & Ashmore,* 788 F.2d 1500, 1507 (11th Cir.1986); *Forrestal Village, Inc. v. Graham,* 551 F.2d 411, 413 (D.C.Cir.1977). Many district courts also have held that in a § 10(b) and Rule 10b–5 action, the applicable limitations period is that of the state's blue sky law.[18]

Thus, following the dictates of *Jensen, White,* and *Dupuy,* this court holds that Miss.Code Ann. § 75–71–501 and Miss.Code Ann. § 75–71–717 of the Mississippi Uniform Securities Act are the Mississippi state statutes or causes of action which bear the greatest substantive resemblance to, and share the greatest commonality of purposes with, federal securities actions brought under § 10(b) and/or Rule 10b–5. Consequently, this court applies the two-year limitation period of Miss.Code Ann. § 75–71–725, applicable to both Miss.Code Ann. § 75–71–501 and Miss.Code Ann. § 75–71–717, to plaintiff's § 10(b) and Rule 10b–5 action here. Thus, plaintiff's claim is time-barred absent a tolling of the two-year prescriptive period. To that issue, this court now turns.

### *ISSUE # 3:*

### WHETHER THE PLAINTIFF'S TWO–YEAR LIMITATIONS PERIOD IS TOLLED BY THE PLAINTIFF'S MENTAL DISABILITY OR THE PLAINTIFF'S ALLEGED FIDUCIARY RELATIONSHIP WITH DEFENDANT RHODEN.

In order to resolve this issue, this court must first determine whether it is required

**16.** *Friedlander,* 788 F.2d at 1508, distinguished, and questioned the validity of, *McNeal v. Paine, Webber,* 598 F.2d 888 (5th Cir.1979), which held that Georgia's common law fraud action was most analogous to a claim for churning under Rule 10b–5. *See supra* p. 1283.

**17.** Both the Mississippi Securities Act and the various state blue sky laws are derived from a common source, the model "Uniform Securities Law."

**18.** The following United States District Court cases held that in a 10b–5 action the applicable statute of limitations is that of the state's blue sky law or analogous securities statute, rather than that of the state's common law fraud action: *Baker v. Wheat First Securities,* 643 F.Supp.

1420, 1422–23 (S.D.W.V.1986); *Montcastle v. American Health Systems, Inc.,* 702 F.Supp. 1369, 1372 (E.D.Tenn.1988); *Rodriguez v. Montalvo,* 649 F.Supp. 1169, 1178 (D.Puerto Rico 1986); *ITG, Inc. v. Price Waterhouse,* 697 F.Supp. 867, 869 (E.D.Pa.1988); *Kronfeld v. First Jersey National Bank,* 638 F.Supp. 1454, 1473–74 (D.N.J.1986); *Nielsen v. Professional Financial Management, Ltd.,* 682 F.Supp. 429, 438 (D.Minn.1987); *Flournoy v. Peyson,* 701 F.Supp. 1370, 1377 (N.D.Ill.1988); *Abelson v. Strong,* 644 F.Supp. 524, 530–32 (D.Mass.1986); *Armbrister v. Roland International Corp.,* 667 F.Supp. 802, 823 (M.D.Fla.1987); *Bergen v. Rothschild,* 648 F.Supp. 582, 584 (D.D.C.1986); *Dingler v. T.J. Raney & Sons, Inc.,* 708 F.Supp. 1044, 1053–55 (W.D.Ark.1989).

to apply federal or state law to accrual and tolling of the limitations period.

■ As to accrual, federal law controls. "While the proper limitations period is borrowed from state law, when the period commences is governed by federal law." *Davis v. A.G. Edwards & Sons, Inc.,* 823 F.2d 105, 107 (5th Cir.1987), citing *Vigman v. Community National Bank & Trust Co.,* 635 F.2d 455, 458–59 (5th Cir.1981); *Azalea Meats, Inc. v. Muscat,* 386 F.2d 5, 8 (5th Cir.1967).[19]

The Fifth Circuit has ruled on this issue in the specific context of Rule 10b–5 actions.

> The period begins for Rule 10b–5 "only when the plaintiff discovers, or in the exercise of reasonable diligence should discover, the alleged violations."

*McNeal v. Paine, Webber,* 598 F.2d 888, 893 n. 11; *Corwin v. Marney, Orton Investments,* 788 F.2d 1063, 1068 (5th Cir.1986).

> It is plain that this requisite "knowledge ... which an aggrieved party must have for ... commencing the statute of limitations is merely that of 'the *facts* forming the basis of this cause of action' ... not that of the existence of the cause of action itself."

*Davis,* at 107, quoting *Azalea Meats,* 386 F.2d at 9 (emphasis in original).

■ The standard for determining accrual of a federal securities action is an objective one, i.e., " 'what facts would alert a reasonable person to the possibility of wrongdoing?' " *Jensen,* 841 F.2d at 608, quoting *Koke v. Stifel, Nicolaus & Co., Inc.,* 620 F.2d 1340, 1343 (8th Cir.1980).

■ Here, the cause of action accrued on the date Mr. Fortenberry sold his stock. Mr. Fortenberry was obviously aware of the sale since the stocks were purchased from him, and he agreed to the purchase. Exercising reasonable diligence, Mr. Fortenberry should have discovered the facts underlying the violation. The plaintiff was not appointed the conservator of Mr. Fortenberry's estate until June 4, 1990. Therefore, the un-

derlying cause of action ran even before the plaintiff here was in a position to bring a claim. Thus, the only way plaintiff's claim can escape the time-bar is through tolling of the statute of limitations.

As to the issue of tolling under § 10(b) and Rule 10b–5 claims, state law controlled prior to *Lampf* and *Beam.* Therefore, under § 27A(a), state law continues to control in the instant cause of action. In *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court grappled with the issue of whether to apply a federal or state statute of limitations to a Title 42 U.S.C. § 1983 claim. Although the Supreme Court recognized the " 'the predominance of the federal interest' in the borrowing process," *Wilson,* 471 U.S. at 269, 105 S.Ct. at 1943, the Supreme Court nonetheless decided that the "length of the limitations period, *and closely related questions of tolling and application are to be governed by state law.*" (emphasis mine) *Id.* In *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), the Supreme Court again confronted the question of whether to apply the state or federal limitation period to a federal statutory scheme, i.e., Title VII. The Supreme Court again applied the state prescriptive period, which did not provide for tolling and, thus, time-barred the plaintiff's claim. *Johnson,* 421 U.S. at 461, 95 S.Ct. at 1721. The *Johnson* Court began its analysis by noting that "[s]tate law has been followed in a variety of cases that raised questions concerning the overtones and details of application of the state limitation period to the federal cause of action." (citations omitted) *Id.* 421 U.S. at 464, 95 S.Ct. at 1722. The Court also pointed out the general necessity of applying state tolling principles generally when state limitations period are applied.

> In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding *tolling,* revival and questions of appli-

---

**19.** "Although we borrow the applicable limitations period from state law, the determination of when that limitations period begins to run is governed by federal law." *Jensen v. Snellings,* 841 F.2d 600, 606 (5th Cir.1988). "... [R]e-gardless of which state statute of limitations is adopted, a federal court is bound to follow the federal rule as to 'when the clock starts running.' " *White,* 650 F.2d at 630, *quoting, Azalea,* 386 F.2d at 8.

cation. In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the state's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim. (emphasis mine). *Id.* Finally, as part of its rationale, the *Johnson* Court noted that, "[i]n the present case there is no relevant body of federal procedural law to guide our decision, and there is no conflicting policy to protect." *Id.* 421 U.S. at 467, 95 S.Ct. at 1723. Thus, this court must follow the dictates of the Supreme Court and apply Mississippi state tolling law.

██ Plaintiff asserts that her statute of limitations is tolled via two theories. First, the plaintiff argues that Mr. Fortenberry's Alzheimer's disease tolled the two-year statute of limitations. Second, plaintiff argues that Mr. Fortenberry and defendant Rhoden had a fiduciary relationship, which tolled the statute of limitations. Both arguments must fail.

Tolling due to mental disability is controlled by Miss.Code Ann. § 15–1–59.

### § 15–1–59. Saving in favor of persons under disabilities.

If any person entitled to bring any of the personal actions mentioned shall, at the time at which the cause of action accrued, be under the disability of infancy or unsoundness of mind, he may bring the actions within the times in this chapter respectively limited, after his disability shall be removed as provided by law. However, the saving in favor of persons under disability of unsoundness of mind shall never extend longer than twenty-one (21) years.

This provision would seemingly toll the plaintiff's cause of action. However, the Mississippi Supreme Court's interpretation of Miss. Code Ann. § 15–1–59 does not permit tolling under the circumstances here presented. In the context of deciding whether to toll a wrongful death claim under § 15–1–59, the Mississippi Supreme Court, in *Arender v. Smith County Hospital,* 431 So.2d 491, 493 (Miss.1983), held that

[t]he above statute [§ 15–1–59] specifically reserves the tolling of the limitations peri-

od to those personal actions mentioned within the chapter of which the wrongful death action is not one.

The *Arender* Court acknowledged the harshness of the above bright-line rule but time-barred plaintiff's claim nonetheless. *Id.* at 493. The *Arender* Court then went on to say that it is the responsibility of the legislature, not the judiciary, to change the effect of § 15–1–59 by changing its language. *Id.*

In the instant case, contrary to plaintiff's express assertions, neither fraud claims nor claims under Mississippi's Uniform Securities law are mentioned anywhere in Title 15 of the Mississippi Code Annotated. Therefore, plaintiff's claim that the two-year statute of limitation was tolled by Fortenberry's Alzheimer's disease must fail.

██ Plaintiff next argues that a fiduciary relationship existed between Mr. Fortenberry and defendant Rhoden and that said fiduciary relationship tolled the statute of limitations. Mr. Fortenberry, as a shareholder, and defendant Rhoden, as an officer of a closely-held corporation, may have had a fiduciary relationship. The court need not reach this issue because even if there was a fiduciary relationship here, it did not toll the limitation period. For the general proposition that a fiduciary relationship tolls a statute of limitations, the plaintiff cites the following quote, taken from a headnote, in *Rice v. Williams,* 387 So.2d 733, 735 (Miss.1980):

[s]ince [the parties] operated as partners, a fiduciary relationship existed between them, which tolled the statute of limitations . . .

This incomplete quote gives the reader the impression that, as a general proposition of Mississippi law, a fiduciary relationship in any context tolls any statute of limitations. However, the headnote in toto reveals a different meaning.

### 3. Partnership 321

Since two parties involved in architectural firm operated as partners, fiduciary relationship existed between them which tolled statute of limitations pertaining to action for partnership accounting until full and final accounting could be had, and thus,

accounting instituted within three years from and after dissolution of partnership was not barred. Code 1972, § 15–1–29. Thus, the specific, fact-bound holding of *Rice* does not coincide with the expansive interpretation urged by the plaintiff here. The *Rice* holding is limited to actions for partnership accounting and merely tolled the statute of limitations in such actions until a full and final accounting, which would normally not occur in any case before the dissolution of the partnership.

In *Rice*, a tolling of the statute of limitations was not required because of the presence of a fiduciary relationship per se. Rather, the tolling was necessary because of the functional imperatives of the particular scenario. *Rice* simply held that a "[s]tatute of limitations pertaining to actions brought for partnership accounting does not begin to run until after dissolution of the partnership." *Rice*, 387 So.2d at 733, headnote 2. The plaintiff would broadly read this rule to mean that any statute of limitations in any claim between two parties who have a fiduciary relationship is tolled until dissolution of said relationship. This court cannot accept this argument. Under Mississippi law, statutes of limitation are not subject to judicially created exceptions which arise from supposed equities. *Shewbrooks v. A.C. & S., Inc.*, 529 So.2d 557, 564–65 (Miss.1988).

Plaintiff then cites *Fought v. Morris*, 543 So.2d 167, 171 (Miss.1989), for the principle that "stockholders in close corporations must bear toward each other the same relationship of trust and confidence which prevails in partnerships, ...." As a preliminary matter, the plaintiff is again attempting to extract a broad rule from a narrow, fact-bound decision. The *Fought* holding arose from a decidedly different factual context than that before this court. The breach of fiduciary duty in *Fought* involved an attempt by a majority shareholder to "squeeze out" a minority shareholder in which the majority shareholder clearly violated a written stock redemption agreement which constituted corporate policy.

More importantly, however, is the fact that any support which *Fought* offers the plaintiff is severely undercut by a proper reading of *Rice v. Williams, supra,* i.e., a fiduciary relationship arising out of a partnership in the context of a claim for a final accounting tolls the statute of limitations until the time when the final accounting occurs. In other words, a correct interpretation of *Rice* renders *Fought* irrelevant to this cause of action. Assume for the sake of argument that there is a *Fought*-type fiduciary relationship here based on the relationship between an officer and a shareholder in a closely-held corporation. The existence of a fiduciary relationship, by itself, is meaningless here because a fiduciary relationship, via the dictates of *Rice*, only tolls a limitation period under very narrow circumstances. These narrow circumstances are not found in the cause of action before this court.

Furthermore, even if this court were to accept plaintiff's interpretation of *Rice* and *Fought*, plaintiff's claim must still fail. Even under plaintiff's broad reading of the *Rice* holding, tolling ends upon dissolution of the fiduciary relationship. Assuming the existence of a fiduciary relationship here, it ended upon the conveyance of the stock. Therefore, even under plaintiff's theory that a closely-held corporation-type fiduciary relationship existed here, the two-year statute of limitations still began to run in 1984.

Lastly, citing *Davion v. Williams*, 352 So.2d 804, 807 (Miss.1977) (for purposes of invoking presumption of undue influence, it is duty of court to determine if a fiduciary relationship exists as a fact in which there is confidence reposed on one side and resulting superiority and influence on the other), and *Costello v. Hall*, 506 So.2d 293, 298 (Miss. 1987) (further discussing presumption of undue influence), the plaintiff argues that the relationship between Mr. Fortenberry and defendant Rhoden was so close and personal that it constituted a confidential fiduciary relationship in which defendant Rhoden exercised an undue influence upon Mr. Fortenberry. Of course, the foregoing discussion has already demonstrated that the fiduciary relationship here alleged does not toll the statute of limitations.

For all of the foregoing reasons, plaintiff's federal securities claim is time-barred. This court is, therefore, compelled to dismiss

plaintiff's cause of action pursuant to Federal Rule of Civil Procedure 12(b)(1).

## PENDENT STATE LAW CLAIMS

 This court also dismisses plaintiff's pendent state claims. If jurisdiction exists for a substantial federal claim and the federal and state claims "would ordinarily be tried in one judicial proceeding," then pendent state claims that derive from a "common nucleus of operative fact" may be entertained. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Grinter v. Petroleum Operation Support Service*, 846 F.2d 1006, 1008 (5th Cir.1988), *cert. denied*, 488 U.S. 969, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988). Whether to entertain pendent jurisdiction of state claims is within the discretion of the federal trial court. This discretion is based on the factors of judicial economy, convenience, and fairness to litigants. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139; *Laird v. Board of Trustees of Institutions of Higher Learning*, 721 F.2d 529, 534 (5th Cir.1983). If the federal claim is dismissed prior to trial, the federal trial court has discretion to dismiss the pendent state claims as well. *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

> Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Id.* The Fifth Circuit has explicitly ruled that when federal claims are dismissed prior to trial, pendent state claims should also be dismissed. *Laird v. Board of Trustees of Institutions of Higher Learning of the State of Mississippi*, 721.F.2d 529, 535 (5th Cir. 1983). "Needless decisions of state law should be avoided, both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139. Therefore, this court also dismisses the plaintiff's pendent state claims.

**SO ORDERED AND ADJUDGED.**